83849-5/61179058

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO. 6:17-cv-001162

ELIZABETH THORPE and JOHN CLARK
WILLIAMS, II,

     Plaintiffs,

vs.

BJ'S RESTAURANTS INC.,

     Defendants.

_____/

## DEFENDANT BJ'S RESTAURANTS INC.'S DISPOSITIVE MOTION FOR FINAL SUMMARY JUDGMENT WITH INCORPORATED MEMORANDUM OF LAW

     Defendant, BJ'S RESTAURANTS, INC., by and through undersigned counsel and pursuant to FED. R. CIV. P. 56 and M.D. FLA. L.R. 3.01, hereby file their Dispositive Motion for Final Summary Judgment and Incorporated Memorandum of Law and requests the Court enter and Order granting the same.

### I.  BACKGROUND

#### a.  Case History

     This case arises out of Defendant, BJ's Restaurants, Inc.'s, alleged failure to exercise reasonable care for the safety of its invitees.  (See Dkt. 3) Plaintiffs' contend Defendant breached the duty owed to decedent by negligently failing to maintain, design, inspect the premises and failing to warn, remedy or prevent a

foreseeably dangerous condition.   Plaintiffs bring their claims pursuant to Florida Negligence Law as survivors as well as a separate cause of action for Wrongful Death.

On September 23, 2015, decedent, John Clark Williams, M.D., was a patron at BJ's Restaurants, Inc.'s ("BJ's") restaurant located in Oviedo, Seminole County, Florida.  Plaintiffs' contend Defendant's employee opened an inward-opening restroom door and struck decedent, John Clark Williams, M.D., causing him to fall and sustain injuries. (Dkt. 3 at ¶13)  Plaintiffs' allege Dr. Williams' injuries ultimately lead to his death approximately nine months after this incident on July 9, 2016 at the age of eighty-nine (89). (Dkt. 3 at 14).

Defendant served its Answer and Affirmative Defendants to Plaintiffs' Amended Complaint in the underlying state court action on June 14, 2017.  (Dkt. 4) Defendant now moves this Court for an Order granting final summary judgment in its favor because Plaintiffs' claims for ordinary negligence and failure to warn, and wrongful death fail as a matter of law.  While BJ's does not dispute that decedent, John Clark Williams, M.D., fell in the men's restroom of their restaurant, his fall was not caused by any breach of duty owed to him by BJ's.  Accordingly, BJ's is entitled to summary judgment as a matter of law as to all claims against it as well as the derivative survivorship claim asserted by Plaintiffs.

### b.   Undisputed Facts

Defendant is the owner of a restaurant located at 8285 Red Bug Lake Road in Ovideo, Seminole County, Florida.  The restaurant was constructed under Building

Permit #13-10474. (Ex. A, ¶ 5)  The Seminole County Building Department reviewed the construction plans for code compliance and issued a Building Permit on March 10, 2014.  Because the building permit was issued on March 10, 2014 Certificate of Occupancy was for this location was issued on July 11, 2014, the 2010 Florida Building Code is applicable.  (Id., ¶7-9)

The men's restroom was designed and constructed in accordance with the 2010 Florida Building Code. (Id. ¶¶7, 11-13)  The men's restroom met all criteria set forth in the 2010 Florida Building Code (Id. ¶11-13)  BJ's Restaurant, Inc. has never been cited for a Building Code Violation as it pertains to the men's restroom at issue in this matter.  (Id. ¶¶ 6-7)

Plaintiffs allege in their Amended Complaint, *inter alia*:

As Decedent, John Clark Williams, M.D. was using the restroom facilities, Ray Jomark [Alicea] Vega abruptly opened an inward-opening restroom door. The door struck Decedent, John Clark Williams, M.D., knocking him to the floor and causing him injuries.

The injuries suffered by Decedent led to his demise on July 9, 2016.

.....

Defendant owed its business invitees, including Decedent John Clark Williams, M.D., a duty to exercise reasonable care for their safety.

(Dkt. 3 ¶¶ 13-14, 19).  In her Answers to Interrogatories, Plaintiff, Elizabeth Thorpe claimed, "A BJ's employee abruptly opened an inward swinging restroom door, knocking [her] father to the ground and fracturing his hip." (Ex. B, ¶ 10)

During his March 27, 2017 deposition, decedent's son-in-law, Jerry Thorpe, testified that he accompanied Dr. Williams to the restroom.   Dr. Williams entered the restroom to use one of the urinals and Mr. Thorpe went to wash his hands at the sink. (Ex. C, p. 11; lines 8-15).   The sinks are on the opposite side of the restroom from the urinals as depicted below in photographs taken by Plaintiff, Elizabeth Thorpe's son, Michael Thorpe, within a week of the incident. (Ex. D, p. 18, 8-13).



 Mr. Thorpe and Dr. Williams were the only ones in the restroom at the time of the incident. (Ex. C, p. 13, lines 8-13)   While Dr. Williams was passing behind Mr. Thorpe, the restroom door was opened by BJ's Restaurant, Ray Vega. (Ex. C, p. 11, lines 10-19)   Mr. Thorpe's back was to the urinals as he was standing at the sink.   He did not see the incident because there was a blind spot. (Ex. C, p. 13, lines 8-13) However, he heard an "oops" or "I'm sorry" and heard Dr. Williams "shuffle." He knew Dr. Williams was falling. (Ex. C, p. 11, lines 21-23).   Jerry Thorpe and Dr. Williams were the only ones in the restroom at the time of the incident. (Ex. C p. 13, lines 11-13).

At the deposition of former BJ's Restaurant, Inc. employee Ray Vega on March 28, 2017, Mr. Vega testified that he was working on the pizza station on the date of the incident.   He left the pizza station to use the restroom, as he had no orders pending on his screen. (Ex. E, p. 29, lines 13-21; p. 51, lines 9-13). He was not in a hurry and was walking at a normal speed. (Ex. E, p. 29, lines 4-9).   When he opened the door, he did not know Dr. Williams was behind the door. (Ex. E, p. 23,

lines 13-16).   Mr. Vega then looked behind the door and saw Dr. Williams on the floor. (Ex. E, p. 31, lines 8-15).

Mr. Vega apologized to plaintiff, Elizabeth Thorpe, and told her that it was not intentional but he did not know that Dr. Williams was behind the door. (Ex. E, p. 48, lines 1-2; 8-10).  Elizabeth Thorpe, told him "thank you, I appreciate that, but there is nothing you can do.  Accidents just happen." (Ex. E, p. 48, lines 12-15).

Dr. Williams frequented this restaurant and had used the restroom on previous occasions.  Jerry and Elizabeth Thorpe took Dr. Williams to this restaurant every week.  (Ex. C, p. 22, lines 5-10)  During those prior visits to the restaurant, Dr. Williams had also used the restroom. (Ex. C, p. 23, lines 4-7).   Jerry Thorpe estimated this to be at least the third time they had been to this restaurant. (Ex. C, p. 22, lines 11-14).

Defendant is unaware of any similar incidents on the subject premises. (Ex. F, ¶ 18, Ex. G, ¶¶ 3-5) Prior Dr. John Clark Williams' fall, no employees or guests complained about the men's restroom door being dangerous or posing a hazard to individuals using the men's restroom. (Ex. G, ¶¶ 3-5)  There were no reports of complaints or reports of injuries sustained due to the men's restroom door by any guest or employee using the men's restroom. (Ex. G, ¶¶ 3-5) Mr. Vega testified that he never had any difficulties navigating inside of the men's restroom. (Ex. E, p. 52, lines 2-6).  He also never experienced any incident where he was almost hit with the door in the restroom at issue. (Ex. E, p. 52, 7-9)

BJ's Manager, Stefanie DeJesus, testified at her deposition that she saw the door at issue on the date of the incident and testified that it was not broken and there was not anything wrong with the door. (Ex. H, pp. 47, lines 24-25; 48, lines 1-7). Also, Mr. Vega testified that he did not think that there was anything wrong with the door on the date of the accident. (Ex. E, p. 53, lines 16-19).

## II. LEGAL STANDARDS AND ANALYSIS

### a. Motion for Summary Judgment Standard

Summary judgment is appropriate when the movant can show there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fennell v. Gilstrap, 559 F.3d 1212, 1216 (11th Cir. 2009) (citing Welding Servs., Inc. v. Forman, 509 F.3d 1351, 1356 (11th Cir. 2007)). Which facts are material depends on the substantive law applicable to the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). Evidence is reviewed in the light most favorable to the non-moving party. Fennell, 559 F.3d at 1216 (citing Welding Servs., Inc., 509 F.3d at 1356).

A moving party discharges its burden on a motion for summary judgment by showing or pointing out to the Court there is an absence of evidence to support the non-moving party's case. Denney v. City of Albany, 247 F.3d 1172, 1181 (11th Cir. 2001) (citation omitted). When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by

depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. Porter v. Ray, 461 F.3d 1315, 1321 (11th Cir. 2006) (citation omitted).   The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value."). In contrast to the moving party, the non-moving party may not rest solely on her pleadings to satisfy this burden and escape summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).   It must designate evidence within depositions, answers to interrogatories or admissions indicating there is a genuine issue for trial. Id. at 324; FED. R. CIV. P. 56(e).

If the evidence offered by the non-moving party is merely colorable, or is not significantly probative, the Court may grant summary judgment. Anderson, 477 U.S. at 249-50. As discussed more fully, *infra*, applying these standards, BJ's is entitled to summary judgment as a matter of law.

### b.  Plaintiffs' Negligence Claims Against BJ's

To sustain a cause of action for negligence under Florida law, the Plaintiffs must prove by a preponderance of the evidence: (1) the defendant a had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; and (3) the defendant's breach was the proximate cause of the plaintiff's injuries and resulting damages. Zivojinovich v. Barner, 525 F.3d 1059, 1067 (11th Cir. 2008); see also Cooper Hotel Serv., Inc. v. MacFarland, 662 So. 2d 710, 712 (Fla. 2d DCA

1995).   A landowner owes two duties to a business invitee: (1) to use reasonable care in maintaining its premises in a reasonable safe condition; and (2) to give the invitee warning of concealed perils that are or should be known to the landowner and that are unknown to the invitee and cannot be discovered through the exercise of due care. St. Joseph's Hosp. v. Cowart, 891 So. 2d 1039, 1040 (Fla. 2d DCA 2004).

Several months into this litigation, Plaintiffs continue to rely on a theory of liability that is unsupported by any facts.   Plaintiffs allege Defendant failed to exercise reasonable care for the safety of its business invitees. (Dkt. 3 ¶ 19)  This is not a duty a landowner owes invitees pursuant to Florida Law.  It is well established that a landowner has a duty to maintain its premises in a reasonably safe condition. However, a landowner is not an insurer of his business invitee's safety.   Aaron v. Palatka Mall, LLC, 908 So. 2d 574, 578 (Fla. 5th DCA 2005).

It appears plaintiffs are attempting to prove negligence by the occurrence of an accident, incident or injury.  Plaintiffs rely solely on their testimony that a BJ's employee opened the inward opening restroom door that came in contact with the decedent.  However, the mere occurrence of an accident does not give rise to an inference of negligence. Miller v. Wallace, 591 So. 2d 971, 973 (Fla. 5th DCA 1992). Liability for negligence in failing to maintain premises in a reasonably safe condition, or in failing to warn of existing dangers, must be predicated on BJ's superior knowledge or means of obtaining knowledge concerning the danger.  Winn-Dixie Montgomery, Inc. v. Petterson, 291 So.2d 666 (Fla. 1st DCA 1974)

To prevail, Plaintiffs must show BJ's failed to use reasonable care in maintaining its premises and had actual or constructive notice of the alleged dangerous condition. See Ugaz v. Am. Airlines, Inc., 576 F. Supp. 2d 1354, 1368 (S.D. Fla. 2008). No liability can attach where it is not shown that BJ's had actual or constructive notice of the dangerous condition. Winn-Dixie Montgomery, Inc. v. Petterson, 291 So.2d 666 (Fla. 1st DCA 1974)

There is no record evidence of actual or constructive knowledge on the part of Defendant of a dangerous condition or that a dangerous condition existed for such a length of time that the Defendant should have known of its existence. There is no record evidence that the men's restroom door was improperly designed, maintained or inspected. The inward opening men's restroom door at issue is an open, obvious, and common condition that was not defective nor broken on the date of the incident.

Plaintiff is unable to prove actual or constructive notice because record evidence filed in support of this motion establishes that the restroom door complied with the applicable Florida Building Code and ADA Accessibility Guidelines as confirmed by the Seminole County Building Division. Further, there are no prior reported complaints or injuries involving the inward opening restroom door.

In contrast, the affidavits, deposition testimony, and discovery supporting this motion are uncontroverted and establish that Defendant did not breach any duty owed to the decedent. Accordingly, without any evidence that defendant breached a duty to the decedent or had actual or constructive notice regarding the existence of a

dangerous or risk-creating condition with the subject restroom door, liability cannot attach.

### c.  Duty to Maintain the Premises and Duty to Warn

#### i.        No Duty - Open and Obvious Condition

More than half-century ago, The Florida Supreme Court upheld summary judgment for a landowner, recognizing that a:

> Business invitee is entitled to expect that the proprietor will take reasonable care to discover the actual condition of the premises and either make them safe or warn [the invitee] of dangerous conditions, **it is equally well settled that the proprietor has a right to assume that the invitee will perceive that which would be obvious to him upon the ordinary use of his own senses.**

Early v. Morrison Cafeteria Co. of Orlando, 61 So. 2d 477, 478 (Fla. 1952) (emphasis added).  Although landowners owe two separate and distinct duties to business invitees the open and obvious nature of the condition may preclude a finding of breach of either duty, as a matter of law.  Brookie v. Winn-Dixies Stores, Inc. and The Lewis Bear Company, No. 1D16-1285, 2017 WL 1239896 (Fla. Dist. Ct. App. Apr. 4, 2017)  Some conditions are so obvious, and not inherently dangerous, that they cannot be said as a matter of law to constitute a dangerous condition.  Such conditions, will not give rise to liability due to the failure to maintain the premises in a reasonably safe condition.  Shoen v. Gilbert, 436 So. 2d 75 (Fla. 1983) Other conditions are dangerous, but are so open and obvious that an invitee may be reasonably expected to discover them and to protect himself.  Ascroft v. Calder Race Course, Inc., 492 So. 2d 1309, 1311 (Fla. 1986).

The open and obvious doctrine is objective.  <u>Gibbs v. Republic Tobacco, L.P.</u>, 119 F, Supp. 2d 1288 (M.D. Fla. 2000).  As one district court explained:

> A condition is open and obvious when it is known to the plaintiff or should have been observed by the plaintiff in the exercise of reasonable care. . . . The entire basis of a premises owner's liability case rests upon its superior knowledge of the danger which causes the plaintiff's injuries.  Therefore, if that superior knowledge is lacking, as when the danger is obvious, the premises owner cannot be held liable.

<u>Allen v. Fountainbleu Mgmt. Servs., LLC</u>, No., 7:11-cv-3532-RDP, 2013 WL 2248732 at *5  (N.D. Ala. May 20, 2013).

In <u>Arnoul v. Busch Entertainment Corp.</u>, the Middle District granted summary judgement for defendant where the plaintiff's injuries were caused by his own "failure to take precautions."  2008 WL 4525106 *3-4 (M.D. Fla. Oct. 6, 2008)  In <u>Crawford v. Miller</u>, the Court held where a plaintiff had knowledge of a protrusion onto a walkway, the premises was not in an unreasonably dangerous condition, since the plaintiff's injuries could have been avoided by taking due care to avoid them.  542 So. 2d 1050, 1051 (Fla. 3d DCA 1989)

Similarly here, record evidence establishes that Dr. Williams was familiar with the men's restroom at this restaurant as he frequented this restaurant and had used the restroom on previous occasions.  Jerry and Elizabeth Thorpe took Dr. Williams to this restaurant every week.  (Ex. C, p. 22, lines 5-10)  During those prior visits to the restaurant, Dr. Williams had also used the restroom. (Ex. C, p. 23, lines 4-7).  Jerry Thorpe estimated this to be at least the third time they had been to this restaurant. (Ex.C, p. 22, lines 11-14).

Further, Dr. Williams had knowledge of the alleged protrusion into the restroom as he walked through the inward opening restroom door just moments prior to the incident.  Dr. Williams entered the men's restroom with his son-in-law, Jerry Thorpe.  After Dr. Williams entered the restroom he went to use one of the urinals and Mr. Thorpe went to wash his hands at the sink. (Ex. C, p. 11; lines 8-14)  Dr. Williams finished using the urinal and was passing behind Mr. Thorpe to the sink when the restroom door was opened by BJ's Restaurant, Ray Vega. (Ex. C, p. 11, lines 10-19)

In the exercise of reasonable care, Dr. Williams should have observed the fact that the restroom door opened inwards.  The obviousness of the alleged danger is an objective standard and the inward opening door could be perceived by Dr. Williams through the ordinary use of his senses.  As held in Allen, a landowner cannot be held liable when the alleged danger is obvious.

Based upon the foregoing, the record evidence establishes that the alleged danger was open, obvious, and known to Dr. Williams as: (1) Dr. Williams had been to this restaurant every week; (2) he had been to this restaurant at least three times; (3) he had used the restroom on previous occasions; and (4) he walked through the restroom door moments before this incident.  Based upon the foregoing, Defendant respectfully requests this Court grant Defendant's Dispositive Motion for Summary Judgment

        **ii.**        **No Duty – Complied with All Applicable Building Codes**

Plaintiffs allege defendant, negligently designed the premises. (Dkt. 3 ¶ 20) To prevail, plaintiff must show an uncommon design or mode of construction that creates a hidden danger that a prudent invitee would not anticipate. Glanzberg v. Kauffman, 788 So. 2d 252, 254 (Fla. 4th DCA 2000).

In Glanzberg, plaintiff's expert testified that the alleged dangerous condition had "construction defects" and "noncompliant code issues." Glanzberg, 788 So. 2d at 253. Thus, there was evidence of uncommon design and unusual mode of construction. Id.

Conversely, in this case, there is no record evidence of any abnormality or defect with the inward opening restroom door. This restaurant was recently constructed in 2014. (Ex. A, Aff. of John R. Pike, ¶8) In reviewing the proposed construction plans that accompanied the permit application, the Seminole County Building Division determined the men's restroom, including the men's restroom door, opening, and available maneuverable space, was designed and constructed in accordance with the applicable 2010 Florida Building Code. (Id. ¶¶7, 11-13)

As constructed, the men's restroom, including the restroom door and opening, satisfied all requirements set forth in the 2010 Florida Building Code. A final building inspection was completed and a certificate of occupancy was issued on July 11, 2014. (Id. ¶11-13) BJ's Restaurant, Inc. has never been cited for a Building Code Violation as it pertains to the men's restroom door at issue in this matter. (Id. ¶¶ 6-7)

Further, Seminole County Building Division Chief Plans Examiner, John R. Pike, visited the BJ's Restaurant at issue on August 31, 2017 and found that the

men's restroom as built complies with the approved building plans on file with the Seminole County Building Division.   He further found that the men's restroom, including the men's restroom door, opening, and clear maneuverability space, was compliant with the applicable Florida Building Code and ADA Accessibility Guidelines. (Ex. A, ¶ 10-13)

Therefore, Defendant should not be found negligent in the design or construction in the men's restroom, and more specifically the men's restroom door, as the construction and design complied with all applicable Florida Building Codes and ADA Accessibility Guidelines. Based upon the foregoing, Defendant respectfully requests this Court grant summary judgment in Defendant's favor.

iii.      **Inward Opening Restroom Door is Common or Innocuous in Everyday life such that it is Not Dangerous as a Matter of Law**

The obvious danger doctrine recognizes that owners and occupiers should be legally permitted to assume that the invitee will perceive that which will be obvious to them upon the ordinary use of their senses.  Aventura Mall Venture v. Olson, 561 So.2d 319 (Fla. 3d DCA 1990); Circle K Convenience Stores, Inc. v. Ferguson, 556 So.2d 1207 (Fla. 5th DCA 1990)   Where an alleged condition that causes the injury was "so open and obvious, so common and so ordinarily innocuous" it is not dangerous as a matter of law. Circle K Convenience Stores, Inc. v. Ferguson, 556 So.2d 1207 (Fla. 5th DCA 1990) (where plaintiff tripped over a joint in gas station parking lot where concrete met the asphalt); Aventura Mall Venture v. Olson, 561 So. 2d 319, 321 (Fla. 3d DCA 1990) (agreeing with Fifth District's holding and

affirming summary judgment on same grounds when plaintiff tripped over sidewalk curb); Ramsey, 124 So. 3d at 419 (affirmed summary judgment where plaintiff tripped over wheel stop in center of parking space that complied with ADA regulations).

Doors, including restroom doors, are encountered by general members of the public everyday and multiple times a day.   Doors are common place and it is common knowledge that most doors – barring automatic sliding doors -- either open inward or outward.   The fact that the restroom door opens inward is plainly visible to an adult exercising reasonable care.   Additionally, record evidence supports a finding that the decedent had used this restroom on prior occasions.   Decedent had visited this BJ's restaurant weekly and at least on at least three occasions before this incident.   During those previous visits, Dr. Williams had also used the restroom. (Ex. C, Dep. Tr. J. Thorpe, p. 22, lines 5-14; p. 23, lines 4-7)

Therefore, Decedent knew or should have known through the ordinary use of his senses that the restroom door opened inwards. However, decedent failed to avoid the observed condition and protect himself when passing from the urinal to the sink.   There was satisfactory clear maneuverable space in the restroom pursuant to the applicable building code and there was no one else in the restroom at the time of the incident.   (Ex. C, Dep. Tr. J. Thorpe, p. 13, lines 8-13) Defendant, BJ's, has the right to assume that the invitee will perceive the direction in which a door opens.

Therefore, Defendant should not be found negligent for an alleged failure to anticipate a harm when the condition is: (1) common; (2) innocuous; and (3) open

and obvious. A landowner is not an absolute insurer of his business invitee's safety. Aaron v. Palatka Mall, LLC, 908 So. 2d 574, 578 (Fla. 5th DCA 2005). The inward opening restroom door is so open and obvious that Dr. Williams was reasonably expected to discover the inward opening door and to protect himself.

### iv.   No Actual or Constructive Notice of a Risk-Creating Condition

Plaintiffs' failed to allege BJ's was on notice of the alleged dangerous condition the men's restroom door created to guests visiting the restaurant. Further, there is no record evidence to support such an allegation. No prior guests complained about the men's restroom door where decedent fell, no other falls or accident occurred due to a person striking another with the inward opening men's restroom door, and the men's restroom – including the door – are complaint with the 2010 Florida Building Code. (Ex. A, ¶¶7, 11-13; Ex. B ¶18; Ex. G. ¶¶3-5)

Any liability on the part of BJ's would turn on whether BJ's had notice – either actual or constructive – of an alleged risk-creating condition. The applicable standard of care is ordinary reasonable care under the circumstances, a standard which requires, as a prerequisite to imposing liability, the premises owner have actual or constructive notice of the risk-creating condition. Haynes v. Lloyd, 533 So. 2d 944, 946 (Fla. 5th DCA 1988). Constructive notice requires a defective condition exist for a sufficient interval of time to invite corrective measures. Id.

In this case, the area where decedent fell is heavily trafficked by guests using the men's restroom. Guests routinely enter and exit through the men's restroom door as well as walk from the urinals to the sink in order to wash their hands without

impediment.  There is no record evidence that BJ's had actual or constructive notice the subject restroom door presented an unreasonable risk of harm to BJ's Restaurant guests.  As stated in Defendant's response to Interrogatory 18, it was unaware of any prior similar incident. (Ex. F, ¶18) As stated in the attached affidavit, of corporate representative, Debbie Nichols, BJ's was never notified of any dangers or hazards presented by the men's restroom door because no guest or employee had complained of any prior to this incident.  There are no reports of complaints or injuries regarding a hazardous or dangerous condition of the inward opening men's restroom door before this incident. (Ex. F, ¶ 18, Ex. G, ¶¶ 3-5, Ex. E, p. 52, lines 2-9).

Finally, BJ's employee, Ray Vega testified that he never had any difficulties navigating inside of the men's restroom. (Ex. E, p. 52, lines 2-6).  He also never experienced any incident where he was almost hit with the door in the restroom at issue. (Ex. E, p. 52, 7-9)

Prior to this incident, there was simply no actual knowledge of any danger presented by the men's restroom door.  There are no reports, comments, or complaints of any other restaurant guest or employee being injured by the inward opening restroom door.  Moreover, there is no evidence from which a jury could reasonably infer constructive knowledge that a defective condition existed for a significant period of time to invite corrective measures.  As previously discussed, the men's restroom, including the door was in compliance with all applicable building codes and ADA accessibility guidelines.  Further, BJ's Manager, Stefanie DeJesus,

testified at her deposition that she saw the door at issue on the date of the incident and testified that it was not broken and there was not anything wrong with the door. (Ex. H, pp. 47, lines 24-25 48, lines 1-7). Also, Mr. Vega testified that he did not think that there was anything wrong with the door on the date of the accident. (Ex. E, p. 53, lines 16-19).

Plaintiffs appear to rely on their own deposition testimony that Dr. Williams was struck with an inward opening restroom door. However, this is insufficient to establish notice of a risk-creating dangerous condition. Furthermore, the fact that decedent fell while in the restroom is insufficient to establish BJ's was on notice of a risk-creating or dangerous condition. Because a landowner is not an absolute insurer of his business invitee's safety. Aaron v. Palatka Mall, LLC, 908 So. 2d 574, 578 (Fla. 5th DCA 2005). Thus, the mere occurrence of an accident does not give rise to an inference of negligence. Miller v. Wallace, 591 So. 2d 971, 973 (Fla. 5th DCA 1992).

Based upon the foregoing, Defendant respectfully requests this Court grant its Motion for Summary Judgment.

### d. Vicarious Liability for Employee Ray Vega

Under Florida law, "[a]n employer may be vicariously liable to third parties under the principle of respondeat superior for damages and injuries caused by its employee's negligent acts which are committed within the scope and course of his employment." Bennett v. Godfather's Pizza, Inc., 570 So.2d 1351, 1353–54 (Fla.Dist.Ct.App.1990).

Although plaintiffs have failed to plead a cause of action for vicarious liability, plaintiffs may attempt to argue that BJ's employee, Ray Vega, was negligent in opening the restroom door and thus BJ's is vicariously liable for his negligent actions.   There is no record evidence to suggest that BJ's employee, Ray Vega, opened the restroom door in any manner other than its intended general use on the date of the incident.

First, former BJ's employee, Ray Vega, testified that he left his pizza station to use the restroom, as he had no orders pending and he felt he had enough time to go use the bathroom and come back. (Ex. E p. 51, lines 9-14, 21-23). He was not in a hurry.   He was just walking into the bathroom at a normal speed. (Ex. E, p. 29, lines 4-9)  Mr. Vega opened the door with his hand and a little bit of force. (Ex. E, p. 32, lines 6-9, p. 52, lines 23-24).   He described it as a normal door. (Ex. E, p. 28, lines 7-9) However, he did not know Dr. Williams was standing behind the door. (Ex. E, pp. 23: 13-16). Mr. Vega then looked behind the door and saw Dr. Williams on the floor. (Ex. E, pp: 31: 8-15).

Second, no one saw the alleged collision.   Plaintiff's husband, Jerry Thorpe, testified he did not see the collision. (Ex. C, p.13, lines 8-13)  He had his back towards Dr. John Clark Williams at the time the restroom door was opened.   There was a blind spot. (Ex. C, p. 13, lines 8-13) However, he heard an "oops" or "I'm sorry" and Dr. Williams "shuffle" his feet.   (Ex. C p. 11, lines 21-23) He knew Dr. Williams was falling. (Ex. C, pp. 11, lines 21-23).

Therefore, there is no record evidence to suggest that Mr. Vega opened the restroom door in any manner or fashion that is inconsistent with its intended purpose or otherwise in any negligent manner.   Rather, Dr. Williams' failure to take precautions was the cause of his alleged injuries.   Based upon the foregoing, Defendant respectfully requests this Court grant its Dispositive Motion for Summary Judgment.

### III. CONCLUSION

The record evidence does not support Plaintiffs' speculation, assumptions, and hunches that a dangerous condition existed with the men's restroom door that caused decedent's fall and alleged injuries resulting in his death nine months later.

Alternatively, there is no record evidence that Defendant BJ's had actual or constructive notice of any alleged dangerous or hazardous condition of the men's restroom door.   Further, there is no record evidence that the door was defective, broken, or had any other abnormalities.

Prior to decedent's fall, no other guests nor employees had a fall, injury, issue or complaint involving the men's restroom door.   Thus, Plaintiffs' theory of liability is based purely on assumptions, speculation, conjecture, and hunches.   Plaintiffs hope some evidence will be discovered, however, after almost one year of litigation, they have nothing.

Further, record evidence definitively establishes that the restroom door at issue satisfied all applicable Florida Building Code and ADA Accessibility Guideline requirements at the time it was instructed in 2014 as well as presently.

The occurred of an incident or accident without more cannot prove liability. The fact that the men's restroom door opened inward was an open an obvious condition that could be perceived by Dr. Williams through the ordinary use of his senses. It was Dr. Williams' failure to use due care to protect against being allegedly struck with the inward opening restroom door that caused his injuries. As such, liability cannot attach.

Defendant, BJ's Restaurants, Inc., respectfully requests the Court enter final summary judgment in its favor and against Plaintiffs Elizabeth Thorpe, and John Clark Williams, II, as co-personal representatives of the Estate of John Clark Williams, M.D.

Dated: 9/14/2017

Respectfully submitted,

Joseph P. Menello, Esquire (147400)
JMenello@WickerSmith.com
Suzanne L. Kersh, Esquire (125048)
SKersh@WickerSmith.com
WICKER SMITH O'HARA McCOY & FORD, P.A.
390 N. Orange Ave., Suite 1000
Orlando, FL 32801
Telephone:   (407) 843-3939
Facsimile:   (407) 649-8118
Attorneys for BJ's Restaurants, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system on September 14, 2017, and the foregoing document is being served this day on all counsel or parties of record on the Service List below, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

_____
Joseph P. Menello, Esquire

## SERVICE LIST

Jonathan T. Gilbert, Esquire
Colling Gilbert Wright & Carter
801 N. Orange Ave., Suite 830
Orlando, FL 32801-5203
Telephone:    (855) 880-4741
Facsimile:    (407) 712-7301
JGilbert@thefloridafirm.com;
RFlanagan@thefloridafirm.com;
RBryan@thefloridafirm.com;
Certificateofservice@thefloridafirm.com

83849-5

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ELIZABETH THORPE and JOHN       CASE NO. 6:17-cv-001162
CLARK WILLIAMS, III,

     Plaintiffs,

vs.

BJ'S RESTAURANTS INC.,

     Defendants.

_____/

### AFFIDAVIT OF JOHN R. PIKE

STATE OF FLORIDA
COUNTY OF SEMINOLE

     BEFORE ME, the undersigned authority, on this day personally appeared Paul Watson, who after being first duly sworn, under oath, deposes and says:

1.    My name is John R. Pike. I am over the age of eighteen (18), am otherwise competent to testify, and have personal knowledge of the information contained herein.

2.    I am currently the Chief Plans Examiner with the Seminole County Building Division. I am a licensed building official, plans examiner, and inspector in the State of Florida. I have over 36 years of construction experience.

3.    I am responsible for reviewing building plans submitted for the approval or denial of building permit applications for Seminole County.

Exhibit A

4.     I have reviewed the building plans and inspections on file for the BJ's Restaurant located at 8285 Red Bug Lake Road, Oviedo, Seminole County, Florida.  The records I reviewed are attached hereto as Exhibit A.

5.     On December 17, 2013, a building permit application was submitted for the construction of the BJ's Restaurant located at 8285 Red Bug Lake Road, Oviedo, Seminole County, Florida.  The Building Permit for the construction of the BJ's Restaurant at this location is #13-10474

6.     Building plans were submitted and reviewed for code compliance by the Seminole County Building Division.  As such, the 2010 Florida Building Code is applicable to the construction of this building.

7.     The men's restroom, including the men's restroom door, door opening, and clear maneuverable space, was designed in compliance with the 2010 Florida Building Code and applicable ADA Accessibility Guidelines.

8.     The building permit was issued on March 10, 2014.

9.     On July 11, 2014, the final building inspection was completed and final construction was approved.  A certificate of occupancy was issued on that date.

10.     On August 31, 2017, I visited the BJ's Restaurant and inspected the men's restroom.

11.    As built, the men's restroom, including the door, conforms with the building plans on file with the Seminole County Building Department for this location.

12.    As of the inspection on August 31, 2017, the men's restroom, including the door, complies with all applicable Florida Building Codes.

13.    As of the inspection on August 31, 2017, the men's restroom, including the door, complies with all applicable ADA Accessibility Guidelines.

14.    This location has never been cited for a Building Code Violation.

15.    The men's restroom, including the door, has never been cited for a Building Code Violation.

FURTHER AFFIANT SAITH NAUGHT.


_____
John R. Pike

Sworn to (or affirmed) and subscribed before me this _31st_ day of _August_, 20_17_, by _John R Pike_.


_____
Notary Public – State of Florida

ELIZABETH PARKHURST
Commission # FF 958174
Expires May 10, 2020
Bonded Thru Troy Fain Insurance 800-385-7019

(Print, Type, Stamp, or Commissioned Name of Notary Public)

Personally Known __X__ OR Produced Identification _____
Type of Identification Produced: _____

**IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
IN AND FOR SEMINOLE COUNTY, FLORIDA**

**ELIZABETH THORPE and JOHN
CLARK WILLIAMS II, as Co-Personal
Representatives of the Estate of JOHN
CLARK WILLIAMS, M.D., deceased,**

        **Plaintiffs,**

**vs.**                        **CASE NO:  2016-CA-002802-11J-G**

**BJ'S RESTAURANTS, INC., a foreign
corporation, and ESTEBAN ANTONIO
MURILLO, an individual,**

        **Defendants.**

                           /

## PLAINTIFF ELIZABETH THORPE'S NOTICE OF SERVING ANSWERS TO DEFENDANT BJ'S RESTAURANTS INC.'S INTERROGATORIES

    Plaintiff, ELIZABETH THORPE, as Co-Personal Representative of the Estate of JOHN CLARK WILLIAMS, M.D., deceased, by and through his undersigned counsel hereby submits her answers to Defendant BJ'S RESTAURANTS, INC.'S, Interrogatories, consisting of 28 questions, served on December 20, 2016.

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed via Florida ePortal on this the 24th day of January, 2017 and served by electronic mail upon **Joseph P. Menello, Esq.**, and **Suzanne Kersh, Esq.**, and Wicker, Smith, O'Hara, McCoy & Ford, P.A., 390 N. Orange Ave., Ste. 1000, Orlando, Florida 32801 ORLcrtpleadings@wickersmith.com *(attorneys for BJ'S Restaurants, Inc.)*.

                         */s/ Jonathan T. Gilbert*
                         Jonathan T. Gilbert, Esq.
                         Florida Bar No. 064829
                         Colling Gilbert Wright & Carter, LLC

Exhibit B

801 N. Orange Ave., Suite 830
Orlando, FL 32801
Telephone:      (407) 712-7300
Facsimile:      (407) 425-8171
Email: JGilbert@TheFloridaFirm.com
Service: RFlanagan@TheFloridaFirm.com
            RBryan@TheFloridaFirm.com
*Attorneys for Plaintiffs*

## ANSWERS TO INTERROGATORIES

1.    What is the name, e-mail address, and street address of the person answering these interrogatories, and, if applicable, the person's official position or relationship with the party to whom the interrogatories are directed?

**ANSWER:**   **Elizabeth Thorpe (with assistance of counsel)**



2.    State the full name, date of birth, Social Security number, driver's license number, e-mail address, and street address at the time of death of the decedent and all former names used by the decedent.

**ANSWER:**   **Name: John Clark Williams**



3.    Was the decedent married at the time of the subject incident? If so, please state the name, e-mail address, and street address of the spouse of the decedent.

**ANSWER:** 

4.    List the names and addresses of all doctors, psychiatrists, psychologists, chiropractors or other members of the healing arts who treated the decedent in the 10 years preceding his/her death, giving in each instance and for each doctor the date of treatment, nature of treatment received, nature of illness for which treatment was given and if being claimed in this case, the sums of money paid or owing to the health care provider for their services.

**ANSWER:**   **Objection. This interrogatory is compound in nature, overbroad, burdensome and not reasonably limited in time and scope. Subject to and without waiving these objections, see below.**





5.      State whether or not the decedent was ever been admitted to, examined or treated at any hospital or institution and if your answer is in the affirmative, state the name of the hospital, the date of admission, reason for the admission, nature of the treatment given and if any sums of money have been paid or are owing to the institution, the amount in each instance.





6.      Describe any and all infirmities and disabilities that the decedent had before the incident causing death, including any illnesses or disorders relative to his/her heart, nerves, nervous system, high blood pressure, diabetes, ulcer, sprain or strain of any part of his/her body, and give the dates, names of and street address of treating or consulting doctors or hospitals.



7.      Excluding the incident which is the subject of this action, describe any and all accidents or personal injuries the decedent suffered, together with the date, time and place of such accident or personal injury and the names and street addresses of all parties involved.



8.      Have any written, oral, recorded, or any other form of statement been obtained by you, your attorneys, agents or employees from any person concerning any of the matters relating to this action and if so, list the name, street address, and telephone number of the person from whom the statement has been obtained, the date the statement was obtained, the name and the street address of the person taking the statement, the present location of the statement and state whether or not the person from whom this statement was taken was provided a copy of the statement.



9.      Have you heard or do you know about any statement or remark made by or on behalf of any party to this lawsuit? If so, state the name and address of each person who made the statement or statements, the name and address of each person who heard it, and the date, time, place and substance of each statement.

10.      Describe in detail, each act or omission on the part of this Defendant you contend constituted negligence that was either the sole or a contributing legal cause of the decedent's

death and as to each act or omission, please list the name and street address of all persons having knowledge of the act or omission.

**ANSWER:   Objection.   This interrogatory calls for a legal opinion.   Subject to the foregoing objection and without waiving same, plaintiff responds as follows:   A BJ's employee abruptly opened an inward swinging restroom door, knocking my father to the ground and fracturing his hip.   Discovery in this matter is continuing and I reserve my right to amend or supplement this answer if appropriate.**

11.    List the names and street addresses of all persons who are believed or known by you, your agents or attorneys to have any knowledge concerning any of the issues raised by the pleadings and specify the subject matter about which the witness has knowledge.



12.    Do you or your attorneys, agents, servants, or employees have any photographs or videos which are relevant to the issues of liability and damages presented by the Complaint and, if so, please state the name and street address of the person having possession of the photographs, the name and street address of the person or persons who took the photographs or videos , the date the photographs or videos were taken, the number of photographs or videos, and include a description of what is depicted in the photographs or videos.



13.    Did the decedent die testate (did the decedent have a will) and if so, state whether the will has been filed for probate, and if so, the date, name of court, title of action and file number as well as the names and addresses of all creditors to the estates and the amount owed by the decedent at the time of his or her death.



14.    List the names, addresses, dates of employment, and rates of pay regarding all employers for whom the decedent worked during the last ten (10) years of his or her life.



15.    Has anything been paid or is anything payable from any third party for the damages listed in your answers to interrogatories? If so, state the amounts paid or payable, the name and address of the person or entity who paid or owes the amounts, and which third parties have or claim a right of subrogation.



16.    As to each survivor making a claim in this case, please state in detail what support they claim to have lost as a result of the decedent's death (support includes contributions in kind, as well as money) and what services were performed for them by the decedent that will now be a necessary expense to them and for each item, the exact amount claimed, and a detailed accounting as to each individual survivor of how you arrived at this amount.



17.   Give the name and street address of all banks, loan associations, savings and loans, brokerage firms, mortgage companies or brokers and other institutions, where the deceased had an account, or in which the deceased had a financial interest for the five (5) years preceding his/her death and identify each account with enough specificity to enable this defendant to obtain the financial records.



18.   Please list the amount of the decedent's personal expenses in each of the five (5) years preceding his or her death being specific as to the type of expense (i.e., clothing, entertainment, food, etc.) and the amount spent each year on that expense.



19.   Please list all damages or incidental expenses (excluding pain and suffering) claimed in this action which have not been listed in your answers to the preceding interrogatories and as to each item of damage or incidental expense, state the name and street address of the person or entity to whom money has been paid or to whom money is owed on behalf of the decedent or his estate.



20.   Was the decedent or any survivor making a claim in this action ever convicted of a crime which under the law was punishable by death or imprisonment in excess of one (1) year, or that involved dishonesty or a false statement regardless of the punishment? If so, state as to each conviction the specific crime and the date and place of conviction.

21.   Please list the name and street address of all persons who resided with the decedent during the five (5) years prior to his or her death.

22.     Do you intend to call any expert witnesses at the trial of this case? If so, state as to each witness the name and address of the witness, the witness's qualifications as an expert, the subject matter upon which the witness is expected to testify, the substance of the facts and opinions to which the witness is expected to testify, and a summary of the grounds for each opinion.

23.     Prior to his/her demise, did the decedent make any statement as to how the event sued upon occurred and if so, state the substance of the statement and the name and address of all persons who heard the statement.

24.     Give the full name and street address of survivors in this action as defined in the Florida Wrongful Death Act.

25.     Have you made an agreement with anyone that would limit a party's liability to anyone for any of the damages dues upon in this case? If so, state the terms of the agreement and the parties to it.

26.     Please state if the decedent or survivors to this action have ever been a party in a lawsuit, and, if so, state the nature of the action, the date and court in which the suit was filed as well as the final disposition.

27.     Do you contend or claim that there has been a loss of net accumulations to the Estate? If so, state the amount and the method that was used in computing the loss.



28.    Has a private autopsy been conducted on the decedent? If so, when, by whom (provide the name and address), and describe all reports and data collections generated as a result of the private autopsy, along with the suspected causes of death.

CASE NO. 2016-CA-002802 -11J -G

*Elizabeth Thorpe*
ELIZABETH THORPE

STATE OF FLORIDA
COUNTY OF _Orange_

Sworn to (or affirmed) and subscribed before me this _30_ day of _December_
20_16_ , by _Elizabeth Anne Thorpe_ .

Notary Public – State of Florida

GOVINDA P. DEWDAT
MY COMMISSION # FF 968482
EXPIRES: March 7, 2020
Bonded Thru Notary Public Underwriters

(Print, Type, Stamp, or Commissioned
Name of Notary Public)

Personally Known _____ OR Produced Identification ✓
Type of Identification Produced: _FL-DL T610-221-60-72500_

In the Matter Of:

ELIZABETH THORPE and JOHN CLARK WILLIAMS

vs.

BJ'S RESTAURANTS

Deposition of:

# JERRY THORPE

March 27, 2017

Vol 1

# PHIPPS REPORTING

*Raising The Bar...*

Exhibit C

```
 1              IN THE CIRCUIT COURT OF THE
            EIGHTEENTH JUDICIAL CIRCUIT IN
 2           AND FOR SEMINOLE COUNTY, FLORIDA

 3           CASE NO.:  2016-CA-002802-11J-G

 4
    ELIZABETH THORPE and JOHN
 5  CLARK WILLIAMS, II, as
    Co-Personal Representatives
 6  of the Estate of JOHN CLARK
    WILLIAMS, M.D., deceased,
 7
            Plaintiffs,
 8
    vs.
 9
    BJ'S RESTAURANTS, INC., a
10  foreign corporation, and
    ESTEBAN ANTONIO MURILLO,
11  an individual,

12          Defendants.

13  _____/

14
                 DEPOSITION OF JERRY THORPE
15

16                    VOLUME 1
                   PAGES 1 - 76
17

18            Monday, March 27, 2017
               1:17 p.m. - 3:08 p.m.
19

20            801 North Orange Avenue
                   Suite 830
21            Orlando, Florida  32801

22

23

24         STENOGRAPHICALLY REPORTED BY:
             Lori Francis, RPR, FPR
25
```

```
 1   APPEARANCES:

 2

 3       ON BEHALF OF THE PLAINTIFFS:

 4           COLLING, GILBERT, WRIGHT & CARTER, P.A.
             801 North Magnolia Avenue
 5           Suite 830
             Orlando, Florida  32801
 6           407-712-7300
             BY:  Jonathan T. Gilbert, Esquire
 7           jgilbert@thefloridafirm.com

 8

 9

10       ON BEHALF OF THE DEFENDANT:

11           WICKER, SMITH, O'HARA, McCOY & FORD, P.A.
             390 North Orange Avenue
12           Suite 1000
             Orlando, Florida  32801
13           407-843-3939
             BY:  Suzanne Kersh, Esquire
14           skersh@wickersmith.com

15

16

17

18

19

20

21

22

23

24

25
```

Page 3

1                          I N D E X

2    Testimony of Jerry Thorpe

3         Direct Examination by Ms. Kersh           4

4
     Certificate of Oath                           73
5    Read and Sign Letter                          74
     Certificate of Reporter                       75
6    Errata Sheet                                  76

7
                          EXHIBITS
8
     EXHIBIT               DESCRIPTION              PAGE
9

10   No. 1   PHOTOS:   (7) 8X10 laser color copies  14

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1           The following proceedings began at 1:17 p.m.:

2               THE COURT REPORTER:  Please raise your right

3       hand.  I'm going to swear you in.

4               Do you swear that the testimony you're about

5       to give will be the truth, the whole truth and

6       nothing but the truth?

7               THE WITNESS:  I do.

8                           JERRY THORPE,

9   having been first duly sworn or affirmed, as hereinafter

10  certified, testified as follows:

11                      DIRECT EXAMINATION

12  BY MS. KERSH:

13      Q.   Good afternoon, Mr. Thorpe.  Would you please

14  state and spell your name for the record?

15      A.   My name is Jerry Allen Thorpe; J-E-R-R-Y

16  A-L-L-E-N T-H-O-R-P-E.

17      Q.   Thank you.  Have you ever had your deposition

18  taken before?

19      A.   No.

20      Q.   Okay.  I'm sure you had the opportunity to or

21  you may have had the opportunity to speak with your

22  wife's attorney regarding this matter.  I just want to

23  go over a little bit of the ground rules as far as how

24  the deposition works and what we're here to talk about

25  today.

Page 11

1    the date of the incident?

2        A.   The date, no.

3        Q.   Do you recall the month?

4        A.   I think it was September because it was close

5    to his birthday.  It's been so long I've forgotten -- to

6    me those things are not important.  More along what

7    happened is the most important part to me.

8        Q.   Could you briefly describe to me what happened

9    that day?

10       A.   The two of us went to the restroom.  He went

11   to the urinal and I don't remember if I -- I don't think

12   I did.  I was washing my hands because we were getting

13   ready to eat, and while I was washing my hands I had my

14   back to him, but I could see.  I was trying to keep an

15   eye on him.

16       He was through doing what he was doing, he turned,

17   which would be from his left and came from behind me as

18   though he was going to the sink to wash his hands, and

19   in that process that's when the door was opened and it

20   was opened with a large amount of force and it hit Doc.

21       That's what I call him.  I heard somebody -- there

22   was a -- I think an "oops" or "I'm sorry." I heard Doc

23   shuffle and I knew he was falling.  So given where he

24   was, I did not have enough time to go this way, so I

25   turned to my left to try to catch him if it was at all

Page 13

1     Q.   Okay.  When you mentioned that he was putting

2  his hands on his pockets, you were gesturing to his

3  thighs, so his pants pockets?

4     A.   I say pants pockets.  He was not trying to

5  stop himself or brace because he knew that would be the

6  wrong thing to do.  I'm sure he had many patients he

7  told to do that.

8     Q.   From where you were standing at the sink

9  washing your hands, you could see Doc behind you in the

10  mirror?

11     A.   I did not see the collision, but I saw him

12  move because there was a blind spot, but he and I were

13  the only ones in there.  It was quiet and I was

14  listening, trying to figure out what he was doing at the

15  same time because I had washed and then I may have --

16  somewhere in that process what I was wanting to do was

17  get my hands dry to go with him and that was about it.

18  I did not see the collision, but I could hear where he

19  was and I could hear the collision.

20     Q.   So as far as your opinion that the door was

21  open with a large amount of force, are you basing that

22  on the sound that you heard?

23     A.   Two things, yes, and mostly sound but -- I

24  guess really where he was standing.  The door -- it was

25  almost that fast when he got hit.  And the thud -- I can

Page 22

1    Q.    Was Dr. Williams driving at this time?

2    A.    No.

3    Q.    Did you pick him up that day?

4    A.    We picked him up.

5    Q.    Where did you pick him up from?

6    A.    Arden Courts.  He had dementia and that was

7    his favorite thing to do was -- he loved the chocolate

8    dessert.  I forgot which one it was.  I'd have to look

9    at the menu, but we'd take him there every week to spend

10   some time with him and we went and picked him up.

11   Q.    So you had been to that BJ's location before?

12   A.    That was at least the third time we had been

13   there.  Once again, I have no idea exactly but three

14   times.

15   Q.    Best estimate is fine.

16   A.    Yeah.

17   Q.    When you arrived at the restaurant, when did

18   you go to the restroom?

19   A.    I'm not 100 percent sure.  I think we had

20   ordered and were on our way.  I don't think the first

21   thing had even made it to the table except maybe drinks,

22   and he probably had iced tea.

23   Q.    When you went to the restroom and entered the

24   men's room, were you walking in front of Doc, or was he

25   walking in front of you?

Page 23

1     A.    I have no idea, but I probably held the door

2   open for him, so I would imagine I went first to let him

3   in because the door was too heavy for him to push open.

4     Q.    On the other times that you went to this BJ's

5   location, do you recall having used the restroom before

6   with Doc?

7     A.    We had been to the restroom before.

8     Q.    How would you describe Doc's mobility on the

9   date of the incident?

10    A.    No worse than normal.  I mean, he was 89 years

11   old, so he wasn't moving around very fast.  I went with

12   him for two reasons:  One, if there was a problem given

13   his age, there would be somebody there.  We would know

14   sooner, which I would do for anybody that age.  It's

15   not -- and two, just to make sure he got back because

16   with the dementia, sometimes he would have a tendency to

17   wander.

18    Q.    Was he able to walk on his own?

19    A.    Yeah.

20    Q.    Did he require any physical assistance?

21    A.    He didn't have any physical -- no.

22    Q.    Didn't use a walking device of any sort?

23    A.    Didn't use a walker, didn't use a cane.  He

24   was slow but --

25    Q.    What is the first thing that you remember

# In the Matter Of:

## ELIZABETH THORPE and JOHN CLARK WILLIAMS

vs.

## BJ'S RESTAURANTS

Deposition of:

# ELIZABETH THORPE

March 27, 2017

Vol 1

# PHIPPS REPORTING

*Raising The Bar...*

Exhibit D

```
 1                    IN THE CIRCUIT COURT OF THE
                   EIGHTEENTH JUDICIAL CIRCUIT IN
 2                 AND FOR SEMINOLE COUNTY, FLORIDA

 3                 CASE NO.:   2016-CA-002802-11J-G

 4
      ELIZABETH THORPE and JOHN
 5    CLARK WILLIAMS, II, as
      Co-Personal Representatives
 6    of the Estate of JOHN CLARK
      WILLIAMS, M.D., deceased,
 7
              Plaintiffs,
 8
      vs.
 9
      BJ'S RESTAURANTS, INC., a
10    foreign corporation, and
      ESTEBAN ANTONIO MURILLO,
11    an individual,

12            Defendants.

13    _____/

14                DEPOSITION OF ELIZABETH THORPE

15

16                        VOLUME 1
                        PAGES 1 - 78
17

18                Monday, March 27, 2017
                  10:21 a.m. - 12:42 p.m.
19

20                801 North Orange Avenue
                        Suite 830
21                Orlando, Florida  32801

22

23

24                STENOGRAPHICALLY REPORTED BY:
                    Lori Francis, RPR, FPR
25
```

Page 2

```
 1    APPEARANCES:

 2

 3         ON BEHALF OF THE PLAINTIFFS:

 4              COLLING, GILBERT, WRIGHT & CARTER, P.A.
                801 North Magnolia Avenue
 5              Suite 830
                Orlando, Florida  32801
 6              407-712-7300
                BY:  Jonathan T. Gilbert, Esquire
 7              jgilbert@thefloridafirm.com

 8

 9

10         ON BEHALF OF THE DEFENDANT:

11              WICKER, SMITH, O'HARA, McCOY & FORD, P.A.
                390 North Orange Avenue
12              Suite 1000
                Orlando, Florida  32801
13              407-843-3939
                BY:  Suzanne Kersh, Esquire
14              skersh@wickersmith.com

15

16

17

18

19

20

21

22

23

24

25
```

```
                                                        Page 3
 1                     I N D E X

 2   Testimony of Elizabeth Thorpe

 3        Direct Examination by Ms. Kersh             4

 4
     Certificate of Reporter                         75
 5   Read and Sign Letter                            76
     Certificate of Oath                             77
 6   Errata Sheet                                    78

 7
                         EXHIBITS
 8
     EXHIBIT              DESCRIPTION               PAGE
 9

10   No. 1   PHOTOS: (7) 8X10 laser color copies   18

11   No. 2   BJ's Restaurants, Inc. guest
              incident report                        22
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 4

1          The following proceedings began at 10:21 a.m.:

2                THE COURT REPORTER:  Please raise your right

3          hand.  I'm going to swear you in.

4                Do you swear that the testimony you're about

5          to give will be the truth, the whole truth and

6          nothing but the truth?

7                THE WITNESS:  I do.

8                          ELIZABETH THORPE,

9    having been first duly sworn or affirmed, as hereinafter

10   certified, testified as follows:

11                       DIRECT EXAMINATION

12   BY MS. KERSH:

13        Q.   Good morning, Ms. Thorpe.  Would you please

14   state and spell your name for the record?

15        A.   Elizabeth Thorpe, E-L-I-Z-A-B-E-T-H, Thorpe,

16   T-H-O-R-P-E.

17        Q.   And I understand that you go by Beth; is that

18   correct?

19        A.   I do.

20        Q.   Have you had your deposition taken before?

21        A.   No.

22        Q.   I'm sure you had the opportunity to speak with

23   your attorney about the purpose of the deposition and

24   what we're here to talk about today, but I just want to

25   go over a couple of the ground rules just as far as

Page 18

1    1-4, 1-5, 1-6, 1-7.

2        (Defendant's Exhibit 1 marked for identification.)

3    BY MS. KERSH:

4        Q.   If you would go ahead and take a look at the

5    seven photographs.  To the best of your knowledge, is

6    that the restroom where the incident occurred?

7        A.   Yes.

8        Q.   Do you know who took these photographs?

9        A.   Yes.

10       Q.   Who took them?

11       A.   My son, Michael Thorpe.

12       Q.   Do you know when these photographs were taken?

13       A.   Not exact date, within a week I would say.

14   I'm not certain about that.  I can't --

15       Q.   But they were not taken on the date of the

16   incident?

17       A.   No.

18       Q.   Is there a photograph in here that depicts

19   where your father was sitting when you entered the

20   restroom?

21       A.   Not exactly.

22       Q.   Do you recall which side of the door he was

23   sitting on?

24       A.   I believe he was -- no, because the door was

25   propped open and I really didn't look spatially, so I



Exhibit 1
Elizabeth Thorpe
3/27/2017   RPTR: LF













**In the Matter of:**

Elizabeth Thorpe/Estate of John Clark Williams, M.D.

vs.

BJ'S Restaurant

**RAY VEGA**

*March 28, 2017*



Exhibit E

Elizabeth Thorpe/Estate of John Clark Williams, M.D. vs. BJ'S Restaurant
RAY VEGA

```
1              IN THE CIRCUIT COURT OF THE 18TH JUDICIAL COURT

2                  SEMINOLE COUNTY, FLORIDA

3    ELIZABETH THORPE,
     ESTATE OF JOHN CLARK WILLIAMS, M.D.,
4
            Plaintiff,
5
       -vs-                      CASE NO. 2016 CA002802-11J-G
6
     BJ'S RESTAURANT,
7
            Defendant.
8                           -    -    -    -

9

10     Videotaped deposition of RAY JOMARK ALIZEA VEGA,

11  taken as if upon direct examination before Lisa M.

12  Wright, a Notary Public within and for the State of

13  Ohio, at the offices of Tackla & Associates, 1020 Ohio

14  Savings Plaza, 1801 East 9th Street, Cleveland, Ohio, at

15  11:20 a.m. on Tuesday, March 28, 2017, pursuant to

16  notice and/or stipulations of counsel, on behalf of the

17  Plaintiff in this cause.

18                          -    -    -    -

19

20

21

22

23

24

25
```



Orange Legal
800-275-7991

```
 1    APPEARANCES:

 2
           Jonathan T. Gilbert, Esq.
 3         Colling, Gilbert, Wright & Carter
           801 North Orange Avenue, Suite 830
 4         Orlando, Florida 32801
           (407) 712-7300
 5         Jgilbert@thefloridafirm.com

 6             On behalf of the Plaintiff,

 7
           Suzanne L. Kersh, Esq.
 8         Wickers, Smith, O'Hara, McCoy & Ford
           390 N. Orange Avenue, Suite 1000
 9         Orlando, Florida 32801
           (407) 843-3939
10         Skersh@wickerssmith.com

11             On behalf of the Defendant.

12    ALSO PRESENT:

13         Brandon Pisciotta, Videographer

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1     A.   It's almost a double.  It's past eight hours --

 2     Q.   Okay.  So on Fridays you may work from before

 3  lunch through to past dinner?

 4     A.   Yeah.

 5     Q.   And any reason to dispute that this incident

 6  occurred during that lunch rush?

 7     A.   It might have occurred in the lunch rush.

 8     Q.   Okay.  Regardless, am I correct that you remember

 9  it being very busy?

10     A.   Uh-huh.

11     Q.   Is that a yes?

12     A.   Yes.

13     Q.   Why don't you tell me what you recall, how the

14  incident occurred.

15     A.   I was going to the bathroom, and when I opened

16  the door I didn't know that he was behind the door.

17  When I opened the door I knocked him down.  I helped him

18  up.  I was like, are you okay?  He said my lower back

19  hurts.  So I was like, okay.  Let me go get my manager

20  so he can go get your table.  He was like okay.

21          So I went to his table and I told his, I think it

22  was his daughter.  I don't remember who she was.  I told

23  her what happened, and then I went to go get my manager.

24  And I told him that I had opened the door and I knocked

25  him down, that it was an accident, that I made sure he
```



1   in order to push the door open?

2       A.  No.

3       Q.  You can just push it open with your foot?

4       A.  Uh-huh.

5       Q.  Is that a yes?

6       A.  Yes.

7       Q.  Okay.  And that door, how would you describe how

8   heavy that door is when you try to push it open?

9       A.  It wasn't that heavy.  It's a normal door.

10      Q.  Some doors you can push them --

11      A.  And they'll --

12      Q.  -- just lightly and they'll continue to open all

13  of the way up.

14      A.  Uh-huh.

15      Q.  Some doors you almost need to lean your body

16  weight into it to push it open.  Where did it fall on

17  that scale?

18      A.  In between.

19      Q.  Okay.

20      A.  It wasn't that heavy and it wasn't that -- how do

21  you say it?  I forgot the word.  Sorry.

22          It wasn't that light.  There you go.

23      Q.  All right.  Somewhere in the middle?

24      A.  In the middle, yeah.

25      Q.  Okay.



```
 1      A.  Like if you -- you did have to force it to open
 2   it but not, you didn't have to put all your body into it
 3   or anything.  You can just open it with your hand.
 4      Q.  Do you remember being in a hurry?
 5      A.  No.
 6      Q.  How fast were you going?
 7          MS. KERSH:  Object to form.
 8      A.  Normal speed.  I was just walking to the
 9   bathroom.
10      Q.  I asked because you had said that you were
11   particularly busy that day?
12      A.  Yeah.
13      Q.  So the longer you're away from making pizzas, the
14   more backed up those orders will get; is that right?
15      A.  Yeah.  But in my station, my station was, I
16   didn't have no orders or anything.  That's why I decided
17   to go to the bathroom.
18      Q.  Okay.
19      A.  When I came back I did have a couple of them, but
20   when I went to the bathroom there was no orders on my
21   screen.
22      Q.  All right.  Did you knock on the door before
23   pushing it open to see if there was anyone standing
24   right on the other side of it?
25      A.  No.
```



```
 1       Q.   When you attempted to enter the restroom, was it
 2    the door that made contact with Dr. Thorpe, or was it
 3    just you after you pushed the door open?
 4       A.   It was the door.  I didn't know -- when I opened
 5    the door I heard a, kind of a bang in the door, so when
 6    I looked he was on the floor.  So I just closed the door
 7    and I helped him up.
 8       Q.   Did you see him falling?
 9       A.   I saw him on the floor.  I didn't see him
10    falling.
11       Q.   Right.  By the time you got around the door he
12    was already on the ground?
13       A.   Uh-huh.
14       Q.   Is that right?
15       A.   Yeah.
16       Q.   You had, did you say you had heard a thud noise?
17       A.   Yeah.  Like when you hear something with the
18    door, I just heard that.  And when I looked around he
19    was on the floor.
20       Q.   Okay.  Did you then think that that was the door
21    making contact with him?
22       A.   Yeah.  I had to -- I was like, there has to be
23    something that I hit with this door and there is nothing
24    behind this door.  It might be a person.  So when I
25    looked it was him.
```



Elizabeth Thorpe/Estate of John Clark Williams, M.D. vs. BJ'S Restaurant
RAY VEGA                                                                    32

 1      Q.  Do you know where it made contact with him?

 2      A.  No.

 3      Q.  When you were opening the door you couldn't see

 4   him?

 5      A.  No.

 6      Q.  When you opened the door that day do you remember

 7   how you opened it, whether it was with your hand or your

 8   body or your foot?

 9      A.  With my hand.

10      Q.  Were you carrying anything?

11      A.  Huh-uh.

12      Q.  Is that a no?

13      A.  No.

14      Q.  Did you hear, after you heard the door make

15   contact with Dr. Thorpe, did you hear any shuffling of

16   feet, anything to indicate he was trying to catch his

17   balance?

18      A.  No.

19      Q.  You didn't hear anything --

20      A.  No.  All I heard was when I hit him when the

21   door, when he hit the floor.  That was it.

22      Q.  Did you think that, when you first saw him did

23   you think that Dr. Thorpe was hurt?

24      A.  I kind of thought about it and that's why I asked

25   him, are you okay, does anything hurt.  And the first



Elizabeth Thorpe/Estate of John Clark Williams, M.D. vs. BJ'S Restaurant
RAY VEGA                                                                48

1        Q.   Tell me about the conversation with the daughter
2    when you told her --
3        A.   It was really short.  She was standing by the
4    hallway where the bathrooms are at, and I went over
5    there and I told her -- if she was with the guy inside
6    and she said yeah.  I was like, I just want to let you
7    know that I was the one that knocked him down with the
8    door, I am so sorry about that, it was not intentional,
9    I did not know he was behind the door.  I didn't see
10   him.  But I do feel sorry because I knocked him down.  I
11   just wanted to let you know that I, anything you guys
12   need, I will be right here.  She told me thank you, I
13   appreciate that, but there is nothing you can do.
14   Accidents just happen.  She was like you're fine.  Don't
15   worry about it.  And then I left.
16       Q.   Had you ever seen Dr. Thorpe and his family in
17   there on prior occasions?
18       A.   No.  We barely go to the front, to the lobby.
19   We're always on the line so we don't get out much on the
20   line.
21       Q.   It's not an open kitchen?
22       A.   No.
23       Q.   You didn't, am I correct, you didn't witness any
24   of the care provided by the paramedics when they
25   arrived?



Elizabeth Thorpe/Estate of John Clark Williams, M.D. vs. BJ'S Restaurant
RAY VEGA                                                                        51

```
 1    questions.

 2                  –   –   –   –

 3         CROSS-EXAMINATION OF RAY JOMARK ALIZEA VEGA

 4    BY MS. KERSH:

 5        Q.  You mentioned that around the time that the

 6    incident occurred that it was a lunch rush for the

 7    restaurant?

 8        A.  Yes.

 9        Q.  Were you in a rush at the time you were using the

10    restroom?

11        A.  We, all the store was in the middle of a rush.

12    My, like I was telling the gentleman over here, my

13    screen was -- my orders were already made, so I needed

14    to go to the bathroom.  That's when I went to the back.

15    The bathroom in the back was busy so I went to the front

16    and used the one in the front, and that's when the

17    incident happened.

18        Q.  So although the restaurant was busy, your station

19    and you personally, you were not busy?

20        A.  Yeah.  I was not busy.

21        Q.  So you had, you felt, enough time to leave your

22    station?

23        A.  And go use the bathroom and come back.

24        Q.  Okay.  Had you used the restroom before the date

25    of the incident?
```



Elizabeth Thorpe/Estate of John Clark Williams, M.D. vs. BJ'S Restaurant
RAY VEGA                                                                52

```
 1      A.  Yeah.
 2      Q.  Did you ever have any difficulties navigating the
 3   inside of the restroom?
 4      A.  Huh-uh.
 5      Q.  Is that a no?
 6      A.  Not at all.
 7      Q.  Did you ever have, experience any incidents where
 8   you were almost hit with the door in this restroom?
 9      A.  No.
10      Q.  There was some conversation about how the door
11   was opened?
12      A.  Yeah.
13      Q.  You testified that you opened the door with your
14   hand?
15      A.  Uh-huh, yes.
16      Q.  You didn't kick the door open?
17      A.  No.
18      Q.  You didn't use your foot to open the door?
19      A.  No.
20      Q.  It didn't require your full body weight to open
21   the door?
22      A.  No, not at all.
23      Q.  But it did require some force to open the door?
24      A.  A little bit of force, yes, that's correct.
25      Q.  Do you know would this door stop on its own
```



Elizabeth Thorpe/Estate of John Clark Williams, M.D. vs. BJ'S Restaurant
RAY VEGA                                                                    53

```
 1    before it came into contact with the metal sheets that
 2    we talked about that separated the urinals?
 3         A.  Yeah.
 4         Q.  Was there some sort of device on the door that
 5    would stop it at a certain point from opening that
 6    you're aware of?
 7         A.  Not that I noticed, no.
 8         Q.  But at some point, because of the way that the
 9    door was made, you would not be able to push it --
10         A.  Yeah.
11         Q.  -- into the urinals; correct?
12         A.  Correct.  Plus the metal sheets that are by the
13    urinal is not going to let it go all the way over there.
14    It's still going to hit that and it's not going to open
15    all the way.
16         Q.  Do you think there was anything wrong with the
17    door on the date of the accident?
18                   MR. GILBERT:  Object to form.
19         A.  Not that I know of.
20         Q.  There was a question as far as whether you were
21    asked to come early today.  Do you recall who it was
22    that asked you to arrive earlier today?
23         A.  The one, Ramona, the one I was talking to.  She
24    told me if I could be here by -- because the subpoena
25    was supposed to be 11:30.  She said if I could be here
```



Filing # 52180058 E-Filed 02/07/2017 03:35:44 PM

83849-5/SLK/60928807

IN THE CIRCUIT COURT OF THE
EIGHTEENTH JUDICIAL CIRCUIT IN AND FOR
SEMINOLE COUNTY, FLORIDA

ELIZABETH THORPE and JOHN                    CASE NO. 2016-CA-002802 -11J -G
CLARK WILLIAMS, II, as Co-Personal
Representatives of the Estate of JOHN
CLARK WILLIAMS, M.D., deceased,

      Plaintiffs,

vs.

BJ'S RESTAURANTS INC., a foreign
corporation, and ESTEBAN ANTONIO
MURILLO, an individual,

      Defendants.

_____/

## NOTICE OF SERVING ANSWERS TO PLAINTIFF'S SECOND SET OF INTERROGATORIES

NOTICE IS HEREBY GIVEN that Answers to the Second Set of Interrogatories

propounded to, Defendant, BJ'S RESTAURANTS, INC., by Plaintiff, Estate of JOHN C.

WILLIAMS, on December 20, 2016, have been furnished via e-mail to: all counsel of

record on date shown below.

WE HEREBY CERTIFY that a copy hereof has been electronically served via
Florida ePortal to: Jonathan T. Gilbert, Esquire, JGilbert@thefloridafirm.com,
RFlanagan@thefloridafirm.com,                    RBryan@thefloridafirm.com,
Certificateofservice@thefloridafirm.com; on this 7th day of February, 2017.

/s/ Joseph P. Menello
Joseph P. Menello, Esquire
Florida Bar No. 147400
Suzanne L. Kersh, Esquire
Florid Bar No. 0125048
WICKER SMITH O'HARA MCCOY & FORD, P.A.
Attorneys for BJ's Restaurants, Inc.
390 N. Orange Ave., Suite 1000
Orlando, FL 32801
Phone: (407) 843-3939
Fax: (407) 649-8118
ORLcrtpleadings@wickersmith.com

Exhibit F

CASE NO. 2016-CA-002802-11J -G

## ANSWERS TO PLAINTIFF'S SECOND SET OF INTERROGATORIES

1. State the full name, address, occupation and employer of any and all persons who answer these Interrogatories or who have provided information used in compiling the answers to these Interrogatories.

**ANSWER:**   These Interrogatory Answers are completed on behalf of the corporate defendant, BJ's Restaurants, Inc., with the assistance of counsel, Joseph P. Menello, Esquire/Wicker, Smith, O'Hara, McCoy, & Ford, P.A., Bank of America Center, Suite 1000, 390 North Orange Avenue, Orlando, Florida, 32801, and are executed by Debbie Nichols, authorized signatory for BJ's Restaurants, Inc., 7755 Center Avenue, Suite 300, Huntington Beach, CA 92647.

**Many of the facts set forth in these answers are not within the personal knowledge of Ms. Nichols, but rather have been assembled and compiled at her direction, as to which facts she is informed, and believes the same, to be true.**

2. Is the name of the Defendant correctly stated in the Complaint? If not, please state the correct name and if applicable all name changes from the date of the alleged incident to the present.



3. State the correct corporate name for the owners and operators of on the date of the incident alleged in the Complaint.

4. Are the date, time and place of the alleged incident correctly stated in the Complaint? If not, please state the date, time and place of this alleged incident believed or known by you, your agents or attorneys to be correct.

5. Please state whether any incident report was prepared by your employees in response to the incident giving rise to this action, and if there was one, please list the name, address and occupation of the current custodian of said incident report.

6. Please list the name, last known address and employer of each and every employee employed by and working at said location on the date of the incident as alleged in the Complaint.



7. State the full name, address, occupation and employer of any and all persons who have investigated this incident for or on behalf of your, your attorneys, agents, insurance carrier, etc.



8. State full name, address, occupation and employer of any and all persons known to have any information concerning the incident alleged in Plaintiff's Complaint in this action.



9. State the full name, address, occupation and employer of all persons contacted by any investigators in their investigation of this incident.



10. State the name, address, employer and telephone numbers of any and all persons known to your or to anyone acting on your behalf, who heard or saw or claims to have heard or seen any of the events or happenings that occurred immediately before, at the time of, or immediately after this incident.



11. Have you, your agents, investigators, attorneys or anyone acting on your behalf, obtained any kind of written, recorded, or other type of statement from the Plaintiff or any persons described in your previous Interrogatory answers? If so, please identify each statement by date, identity of person giving statement and name of current custodian of each statement.



12. Based on your knowledge at this time, describe in detail how the alleged incident happened, including all actions taken by the Defendant to prevent the incident.



13. State the frequency and dates of inspections of the area where this incident occurred for the 30-day period prior to the incident and the 24-hour period after this incident, which is the subject matter of this litigation. State the name, address and job title of the person who made the last inspection prior to the incident.



14. Did any person inspect the area where the Plaintiff was allegedly injured within 24 hours prior to the alleged incident. If so, please state the name and address of each person performing said inspection, the times or frequencies of said inspection(s), and whether or not said inspection(s) revealed any defect or condition to be present.



15. Did any person inspect the area where the Plaintiff was allegedly injured within 24 hours after the alleged incident? If so, please state the name and address of each person inspecting said area, the time and date of each inspection, and the employment capacity of each person, if any.

16. State whether you have within your possession or control photographs, plates, diagrams of the incident scene or objects connected with said incident. Describe any and all such items.



17. State who was responsible for the design and construction of that portion of the premises where Plaintiff was injured as alleged in the Complaint.

18. Please state whether or not you have experienced any other similar incidents on the premises involved in this action within six months prior to or six months following the date of incident.

**ANSWER:**   **Defendant is unaware of any prior similar incidents.**

19. If your answer to questions 11 is yes, please list the name, address and occupation and telephone number for each and ever individual involved in said incidents and describe the status of the individual (i.e., person falling, eye witnesses, etc.)

20. Please state the name, address and telephone number for those individuals responsible for maintaining the premises involved in this action on the date of the incident in question.

21. Please give the name, address, and occupation of the person with your company who would have the most details concerning the maintenance and cleaning procedures utilized by your company on the premises involved in this action on the date of the incident in question.

CASE NO. 2016-CA-002802-11J -G

22. Give concise statement of the facts as to how you contend the Plaintiff's incident took place.



23. If you contend that Plaintiff acted in such a manner as to cause or contribute to the incident, give a concise statement of the facts upon which you rely.

24. Does the Defendant or its attorneys intend to call any non-medical expert witnesses at the trial of this case? If so, please state the name and address of each witness, their qualifications as an expert, the subject matter upon which they are expected to testify, and the substance of the facts and opinions to which each expert is expected to testify and a summary of the grounds for each opinion.



25. State whether there is liability insurance covering the Defendant(s) for this incident. If yes, identify the insurance carrier, policy number and applicable limits of liability.

## <u>VERIFICATION OF ANSWERS TO INTERROGATORIES</u>

I HEREBY CERTIFY that the foregoing Answers to Interrogatories are true and correct to the best of my knowledge, information, and belief.

Debbie Nichols
Vice President, Risk Management

STATE OF FLORIDA
COUNTY OF ORANGE

The foregoing Answers to the First Set of Interrogatories were acknowledged before me this 20th day of January 2017, by _Debbie Nichols_, who is personally known to me or who has produced _N/A_ as identification and who did take an oath.



Signature of Notary Public

_Deborah Hyoung Sook Chun_
Printed Name of Notary Public

DEBORAH HYOUNG SOOK CHUN
Commission # 2139324
Notary Public - California
Orange County
My Comm. Expires Jan 7, 2020

83849-5

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ELIZABETH THORPE and JOHN
CLARK WILLIAMS, II,

      Plaintiffs,

vs.

BJ'S RESTAURANTS INC.,

      Defendants.

_____/

CASE NO. 6:17-cv-001162

### AFFIDAVIT OF DEBBIE NICHOLS

STATE OF CALIFORNIA
COUNTY OF _Orange_

    BEFORE ME, the undersigned authority, on this day personally appeared Debbie Nichols, who after being first duly sworn, under oath, deposes and says:

1.    My name is Debbie Nichols. I am over the age of eighteen (18), am otherwise competent to testify, and have personal knowledge of the information contained herein.

2.    I am currently employed by BJ's Restaurants, Inc., as the Vice President of Risk Management.

3.    Prior to Dr. John Clark Williams' fall on September 23, 2015, no guest or employee complained about the men's restroom door being dangerous or posing a hazard to individuals using the men's restroom.

4.    Prior to September 23, 2015, there were no reports of complaints or reports of injuries sustained due to the men's restroom door by any guest or employee using the men's restroom.

Exhibit G

5.  Prior to Dr. John Clark Williams' fall on September 23, 2015, no guest or employee reported a similar accident, incident, or injuries involving the men's restroom door.

FURTHER AFFIANT SAITH NAUGHT.

*Debbie Nichols*

**Debbie Nichols**

Sworn to (or affirmed) and subscribed before me this 13th day of September, 20 17, by Deborah Hyoung Sook Chun.

```
DEBORAH HYOUNG SOOK CHUN
Commission # 2139324
Notary Public - California
Orange County
My Comm. Expires Jan 7, 2020
```

Notary Public – State of California

(Print, Type, Stamp, or Commissioned Name of Notary Public)

Personally Known  X  OR Produced Identification _____
Type of Identification Produced: _____

```
 1    IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL
      CIRCUIT IN AND FOR SEMINOLE COUNTY, FLORIDA
 2
                 Case No. 2016-CA-002802-11J-G
 3

 4    ELIZABETH THORPE and JOHN CLARK WILLIAMS II, as
      Co-Personal Representatives of the Estate of JOHN
 5    CLARK WILLIAMS, M.D., deceased,

 6
              Plaintiff,
 7
      v.
 8

 9    BJ'S RESTAURANTS, INC., a foreign corporation and
      ESTEBAN ANTONIO MURILLO, an individual,
10

11            Defendants.

12    _____/

13    DEPOSITION OF:      STEPHANIE DeJESUS

14    DATE TAKEN:         May 31st, 2017

15    TIME:               9:57 a.m. - 11:08 a.m.

16    PLACE:              Wicker, Smith, O'Hara, McCoy &
                          Ford, P.A.
17                        390 N. Orange Avenue, Suite 1000
                          Orlando, FL 32801
18

19    TAKEN BY:           The Plaintiff

20    REPORTED BY:        Jenny Marmol
                          Court Reporter, Notary Public,
21                        State of Florida

22

23

24

25                                        ┌─────────────┐
                                          │  Exhibit H  │
                                          └─────────────┘
```

```
 1                    APPEARANCES

 2

 3   On behalf of the Plaintiff:

 4       COLLING, GILBERT, WRIGHT & CARTER
         Jonathan T. Gilbert, Esquire
 5       jgilbert@thefloridafirm.com
         801 N. Orange Avenue, Suite 830
 6       Orlando, FL 32801
         (407) 712-7300
 7


 8

 9   On behalf of Defendant:

10       WICKER, SMITH, O'HARA, MCCOY & FORD, P.A.
         Suzanne Kersh, Esquire
11       skersh@wickersmith.com
         390 N. Orange Avenue, Suite 1000
12       Orlando, FL 32801
         (407) 843-3939
13

14

15

16

17

18

19

20

21

22

23

24

25
```



```
 1   you worked in previously larger in terms of

 2   capacity than the Oviedo location?

 3       A.   Yes.

 4       Q.   Is the Kissimmee location that you did

 5   your training in larger in terms of capacity than

 6   the Oviedo location?

 7       A.   Yes.

 8       Q.   There was a discussion that there may have

 9   been one other person on the date of the incident

10   who brought a chair into the restroom?

11       A.   Correct.

12       Q.   Did that person have any other involvement

13   in the incident other than bringing the chair into

14   the restroom?

15       A.   Not to my knowledge.

16       Q.   When you reported to the restroom, did you

17   have to push the men's room door open to gain

18   access?

19       A.   I don't remember if I opened it or if

20   someone else had it opened.

21       Q.   Did you look at the restroom door at the

22   time of the incident or after the incident on the

23   same day?

24       A.   I was in the restroom, so I would have

25   seen the door.
```



Orange Legal
800-275-7991

STEPHANIE DEJESUS

```
 1      Q.    Did you notice whether the door was

 2   broken?

 3      A.    The door was not broken.

 4      Q.    Was -- that you recall, was there anything

 5   wrong with the restroom door, the men's restroom

 6   door?

 7      A.    No.

 8      Q.    At the time of the incident, you were the

 9   dining room manager that was working?

10      A.    Correct.

11      Q.    And to your knowledge, Mo or Maurice

12   O'Donahue, the general manager, was not there at

13   the time of the incident?

14      A.    I feel like it happened on a Wednesday,

15   which would have meant if it was a Wednesday, that

16   Mo would have been in for inventory.

17      Q.    What time is inventory usually done?

18      A.    It varies.  It begins at 5 a.m. in the

19   morning, and sometimes you leave at 6 p.m. at

20   night.

21          MS. KERSH:  I don't have any other

22      questions.

23                  REDIRECT EXAMINATION

24   BY MR. GILBERT:

25      Q.    If September 23, 2015, was a Wednesday,
```