UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ELIZABETH THORPE and
JOHN CLARK WILLIAMS, II,
As Co-Personal Representatives
of the Estate of JOHN CLARK
WILLIAMS, M.D., deceased,

      Plaintiffs,

vs.                                    Case No:      6:17-cv-01162-Orl-18TBS

BJ'S RESTAURANTS INC.,
a foreign corporation,

      Defendant.
_____/

## PLAINTIFFS' RESPONSE AND MEMORANDUM IN OPPOSITION TO DEFENDANT'S DISPOSITVE MOTION FOR FINAL SUMMARY JUDGMENT

Plaintiffs, ELIZABETH THORPE and JOHN CLARK WILLIAMS, II, as Co-Personal Representatives of the Estate of JOHN CLARK WILLIAMS, M.D., deceased, respond to Defendant's Dispositive Motion for Final Summary Judgment and incorporate its memorandum in opposition to same, and as good grounds state:

### I.    BACKGROUND INFORMATION

**A. Case History**

1. This action involves the injury and subsequent death of John Clark Williams, M.D. (hereafter "Dr. Williams") after being knocked to the ground by a door opened by one of the Defendant's employees, Ray Jomark Alizea Vega (hereafter "Mr. Vega").

2. On June 5, 2017, Plaintiffs filed their Amended Complaint, which alleged that Mr. Vega was an employee working at the Defendant's restaurant located in Oviedo, Florida when the incident occurred. See Doc. 3, ¶ 11. Further, Plaintiffs alleged that Dr. Williams was a

patron of the restaurant using the restroom when he was knocked to the ground by Mr. Vega, who had abruptly opened the inward-opening restroom door, which then struck Dr. Williams. Id. at ¶ 13.

3. Plaintiffs asserted ten ways the Defendant, either itself or through its employee, was negligent in the incident that caused the injuries and death of Dr. Williams:

1) Negligently failing to maintain or adequately maintain the premises thereby endangering the safety of Dr. Williams;

2) Negligently designing the premises thereby endangering the safety of Dr. Williams;

3) Negligently failing to inspect or adequately inspect the subject location for dangerous conditions thereby endangering the safety of Dr. Williams;

4) Negligently failing to warn or adequately warn Dr. Williams of the dangerous condition when Defendant knew or should have known of said danger and Dr. Williams was unaware of said danger;

5) Negligently failing to correct, or adequately correct the dangerous condition when said dangerous condition was known to Defendant or had existed for a sufficient length of time so that Defendant knew or should have known of it;

6) Negligently failing to take appropriate measures to prevent this foreseeably dangerous condition from occurring when such condition occurred with regularity during the regular course of Defendant's business;

7) Negligently failing to have adequate staff on duty and/or assigned to the task of inspecting the subject location for dangerous conditions; particularly when such dangerous conditions occurred with regularity during the regular course of

Defendant's business;

8) Negligently failing to place warning signs and/or other devices on the aforesaid premises to advise patrons such as Dr. Williams of the existence of the aforesaid dangerous condition;

9) Negligently failing to train and/or inadequately training its employees to inspect said premises for dangerous conditions; particularly when such dangerous conditions occurred with regularity during the regular course of Defendant's business; and

10) Negligently failing to act reasonably under all the circumstances.

See Doc. 3, ¶¶ 20 and 24.

4. As presented in the memorandum below, the evidence has shown that several of these negligence claims are supported by the evidence, and, at a minimum, present a jury question on whether the Defendant is liable for causing the injuries and/or death of Dr. Williams.

**B. Facts and Testimony**

Defendant has provided a section labeled "Undisputed Facts". However, as can be clearly seen from the testimony and evidence within this section, several of the statements provided by the Defendant *are in dispute* and there are other key pieces of information omitted from Defendant's motion that create obvious liability disputes. A more complete set of facts are being provided to the Court below and through the full deposition transcripts being filed in this case.

On September 23, 2015, Dr. Williams and his son-in-law, Jerry Thorpe, were both in the men's restroom when the incident occurred. (J. Thorpe Depo., 11:8 – 10). The restroom was at capacity during that time. (Vega depo., 37:11 – 16). The men's restroom is designed such that

when you enter, the sinks are to the right and the urinals and stall are to the left. (DeJesus Depo., 26:24 – 27:3). The door to enter the restroom is inward opening. (DeJesus Depo., 36:12 – 14).

After Dr. Williams finished using the urinal, he was walking toward the sinks when someone opened the door to enter the restroom with "a large amount of force" and caused it to strike Dr. Williams. (J. Thorpe Depo., 11:16 – 19). Mr. Thorpe observed that the door was "opened a fairly good ways" and "it hit him with a thud" due to the amount of force from the "thick wood door". (J. Thorpe Depo., 11:20 – 25). Though he did not witness the door open, Mr. Thorpe knew it was opened rapidly and with force because of how short the time was between when he heard it start being opened to when he heard it strike Dr. Williams, less than half a second in total. (J. Thorpe Depo., 58:7 – 21). Although Mr. Thorpe did not see the collision itself, the sound was loud, which also indicated the door was opened quickly. (J. Thorpe Depo., 13:8 – 14:2; 14:7 – 9). Furthermore, Mr. Thorpe testified the action "was not a simple easy door open[ing]." (J. Thorpe Depo., 14:2). Dr. Williams was struck with the end of the door. (J. Thorpe Depo., 14:5 – 6). Mr. Thorpe observed that there was a "large" thud caused when the guy who opened the door hit Dr. Williams. (J. Thorpe Depo., 15:9 – 11).

Dr. Williams landed face up. (J. Thorpe Depo., 21:4 – 5). Mr. Thorpe testified this incident could have been prevented had Mr. Vega not pushed open the door so quickly. (J. Thorpe Depo., 57:1 – 10). He believed "the door was opened way too quickly" that day by Mr. Vega. (J. Thorpe Depo., 57:23 – 25). Mr. Thorpe also felt the environment was unsafe with an inward-opening door where it is unknown to the one entering the restroom whether there is anyone inside the restroom who would be in the path of the opening door. (J. Thorpe Depo., 57:10 – 19). Given that the door seemed to have a mechanism to slow its opening, Mr. Vega

must have applied "a lot of force" and been traveling "at a very quick rate" to cause such a large thud and knock over Dr. Williams. (J. Thorpe Depo., 58:1 – 5).

Mr. Vega knew it was an inward-opening door. (Vega depo., 27:21 – 22). He knew it did not have a handle or latch system that required turning a knob to gain entry and could simply be pushed open. (Vega depo., 27:23 – 28:6). He knew it not to be a heavy door, allowing it to be opened without much force. (Vega depo., 28:7 – 29:3). He knew this bathroom was smaller than others, including the Defendant's location across town. (Vega depo., 55:23 – 56:4). He knew that patrons would need to travel from the urinal to the sink, passing by the door's path. (Vega depo., 35:11 – 16). He knew the door, when opened, would extend into the pathway from the urinal to the sink. (Vega depo., 35:21 – 36:11; 36:19 – 24). He estimated that the door extended an additional nine inches into the pathway from the urinals to the sinks beyond the metal urinal divider. (Vega depo., 40:3 – 8). He knew if the bathroom was at capacity maneuvering in the restroom would be more difficult with the door open because it extended into the pathway from the urinal to the sink. (Vega depo., 36:6 – 18).

Indeed, the men's restroom was at capacity during the incident. (Vega depo., 37:11 – 16). Mr. Vega could not see inside when he was about to open the door and never saw Dr. Williams prior to knocking him over. (Vega depo., 32:3 – 5). Mr. Vega did not know that Dr. Williams was on the other side of the restroom door when he pushed it open. (Vega depo., 23:13 – 17).

Yet, when entering the restroom he took no precautions to announce his impending entry by knocking or other actions. (Vega depo., 29:22 – 25). Instead, he opened the door with enough force to hear a "bang in the door" and looked inside to see he had knocked Dr. Williams to the

floor. (Vega depo., 31:1 – 7). The door hit Dr. Williams so hard he was on the floor by the time Mr. Vega looked inside to see what had caused the "bang in the door." (Vega depo., 31:8 – 15).

When the incident occurred, the Defendant's entire store was in a rush. (Vega Depo., 22:11 – 22:19). The incident occurred during the lunch rush, and it certainly was very busy when the incident occurred. (Vega depo., 23:5 – 12; 51:5 – 11). Mr. Vega was able to clear his orders and take a restroom break, but by the time he returned back from the restroom, he had more orders to complete. (Vega depo., 29:13 – 21). Also, the employee restroom was full; thus, he had to leave the back area and walk to the patron's side of the store to access the front restroom. (Vega depo., 35:21 – 36:5).

Mr. Vega apologized to Elizabeth Thorpe for knocking over Dr. Williams, her father; Mrs. Thorpe acknowledged that it was not intentionally done. (Vega depo., 24:4 – 10). Mr. Vega testified he wishes he could go back in time and not open the door in the manner that he did; he feels terribly about it. (Vega depo., 45:8 – 13). Mr. Vega did not feel that Dr. Williams, on the other hand, did anything wrong to cause the incident. (Vega depo., 49:4 – 7).

Unfortunately, the Defendant did not take precautions to prevent this dangerous situation. The Defendant had an employee handbook that every employee was required to read and sign acknowledging the rules for employees. (Vega depo., 13:4 – 14:13). There were no other written documents or store policies employees reviewed when initiating employment with the Defendant. (Vega depo., 19:9 – 19:12). Aside from the employee handbook, there was a 45-minute orientation and a 20-minute tour of the store. (Vega depo., 14:14 – 15:14). When Mr. Vega transferred stores, he was given a recap of this prior training at his station and the store layout because it was different than the prior store where he worked. (Vega depo., 17:1 – 17:17).

There were never any store policies or training provided on restroom entry or safety. (Vega depo., 20:11 – 20:19). Specifically, there were no policies requiring an employee to knock on the inward-opening restroom door before pushing it open. (Vega depo., 30:1 – 11). There were no policies and procedures requiring employees to enter the restroom by opening the door slowly or partly opening the door and asking if it was safe to enter. (Vega depo., 30:12 – 17). If any such policies existed, Mr. Vega would have abided by same. (Vega depo., 30:18 – 21).

Furthermore, there were no mechanisms on the door to prevent it from being opened quickly. (Vega depo., 30:22 – 25). The Defendant's other locations have larger restrooms with more space for maneuvering inside. (Vega depo., 55:23 – 56:4; DeJesus depo., 37:18 – 24). The Defendant's other locations also have restrooms that are designed differently than the restroom at the Oviedo location. (DeJesus depo., 37:13 – 16). This location was not cleared to open for business until just months before this incident occurred. Doc. 16, Exh. A, ¶¶ 8–10.

## II. MEMORANDUM OF LAW

The evidence has created a jury question on at least two different claims of negligence by the Defendant, one involving its employee's actions and the other involving its own omissions.[1] First, as presented in detail below, Mr. Vega was negligent in how he entered the restroom, knowing he could expose a patron, like Dr. Williams, to danger by his actions. Second, the Defendant failed to protect its patrons against such dangers existing on the premises by failing to enact policies and procedures to ensure patron safety or to alter the environment to make it safe for patrons. Since a jury question is created by the evidence detailed below, summary judgment must be denied.

---

[1] To the extent Plaintiffs need to amend the operative complaint to more specifically allege the actions of Mr. Vega, Plaintiffs will also move for leave to amend the complaint separately.

### A. Standard of Review for Motion for Summary Judgment

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, (1986); Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004). An issue of fact is "material" if, under the applicable substantive law, it might affect the outcome of the case. Hickson Corp., 357 F.3d at 1259.

An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. Id. at 1260. A court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id.; Anderson, 477 U.S. at 251–52.

The party moving for summary judgment has the burden of proving that: (1) there is no genuine issue as to any material fact, and (2) it is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. Anderson, 477 U.S. at 255. The court may not weigh conflicting evidence or weigh the credibility of the parties. Hairston v. Gainesville Sun Pub. Co., 9 F.3d 913, 919 (11th Cir. 1993). If a reasonable fact finder could draw more than one inference from the facts and that inference creates an issue of material fact, a court must not grant summary judgment. Id. On the other hand, summary judgment must be granted "against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

**B. The Evidence Supports Plaintiffs' Negligence Claims Against Defendant.**

The evidence detailed above would support a jury finding the Defendant was negligent in causing the injuries and subsequent death of Dr. Williams. The Defendant owed a duty to maintain the premises and a duty to warn of any dangers on the premises. Tallent v. Pilot Travel Ctrs., LLC, 137 So. 3d 616 (Fla. 2d DCA 2014). Florida law, analyzed in more detail below, requires the Defendant's motion for summary judgment be denied based upon the evidence.

**C. Defendant Had A Duty To Maintain And A Duty To Warn.**

In premises liability cases, the Defendant owes the invitee two duties: (1) the duty to use reasonable care in maintaining the property in a reasonably safe condition; and (2) the duty to warn of dangers of which the owner has or should have knowledge and which are unknown to the invitee and cannot be discovered by the invitee through the exercise of reasonable care." Wolford v. Ostenbridge, 861 So. 2d 455, 456 (Fla. 2d DCA 2003). And in fact, these duties are analyzed separately. See Tallent, 137 So. 3d 616.

"A plaintiff's knowledge of a dangerous condition does not negate a defendant's potential liability for negligently permitting the dangerous condition to exist; it simply raises the issue of comparative negligence and precludes summary judgment." Fenster v. Publix Supermarkets, Inc., 785 So. 2d 737, 739 (Fla. 4th DCA 2001). To that end, "[t]he discharge of the duty to warn does not necessarily discharge the duty to maintain the premises in a reasonably safe condition." Knight v. Waltman, 774 So. 2d 731, 734 (Fla. 2d DCA 2000). Thus, even if it is assumed that Dr. Williams became aware that the inward-opening restroom door was a dangerous condition

because it significantly intruded into the path from the urinal to the sink, which there is no evidence to suggest he did, the duty to warn may be eliminated, but not the duty to maintain.

In Tallent v. Pilot Travel Ctrs., LLC, the plaintiff, Mr. Tallent, knew about an oil spill on the premises of a gas station owned by Pilot, and when Mr. Tallent slipped on it and was injured, summary judgment for Pilot was granted by the trial court. 137 So. 2d 616, 617–18. On appeal, the Second DCA reversed, since only the duty to warn had been met by Mr. Tallent's knowledge of the spill. Id. at 618. There still existed a jury question on whether Pilot's duty to maintain the premises had been met because, even though Mr. Tallent had knowledge of the spill, "the record does not conclusively demonstrate that Pilot should not have anticipated the potential harm to Mr. Tallent as a result of the spreading diesel fuel." Id. In the present case, the Defendant knew or should have known of the danger created by the inward-opening restroom door into the urinal-to-sink path of invitees, but did nothing about it for many months since opening for business.

Plaintiffs do not believe either duty was met by Defendant and will address both with the evidence. On the duty to maintain the premises, the Defendant did not implement special mechanisms on the door to prevent it from being opened quickly such that this incident was allowed to occur. (Vega depo., 30:22 – 25). Additionally, the Defendant's other locations have larger restrooms with more space for maneuvering inside to prevent safety concerns like the one at the Oviedo location. (Vega depo., 55:23 – 56:4; DeJesus depo., 37:18-24).

As to both duties, despite providing employee training, the Defendant never instituted any store policies or training on restroom entry or safety. (Vega depo., 20:11 – 20:19). Specifically, there were no policies requiring an employee to knock on the inward opening restroom door before pushing it open or to open the restroom door slowly or partially and asking if it was safe to enter. (Vega depo., 30:1 – 17). If any such policies had been in place, Mr. Vega

would have abided by same. (Vega depo., 30:18 – 21). Since those policies were not in place, Mr. Vega, knowing the door opened into the urinal-to-sink path, entered the restroom without taking any precautions and in a manner he now wishes he could take back. (Vega depo., 29:22 – 25; 40:3 – 8; 45:8 – 13 ) The evidence supports that the failure to have those systems in place and actions by Mr. Vega led to the injury and death of Dr. Williams. At a minimum, there is a question of fact in that regard such that summary judgment must be denied by this Court.

### i. The Dangerous Restroom Door Condition Was Not Open And Obvious.

The Defendant seeks to claim the condition was open and obvious, yet some of its employees claim to have been unaware of the danger. Defendant cites to its response to Interrogatory 18 where it was unaware of prior similar incidents. (Doc. 16, Ex. F, ¶18). There were no dangers or hazards reported with the restroom door by any guest or employee. (Doc. 16, Ex. G ¶¶3-5, Ex E., p. 52, lines 2-9). Therefore, the defense theory that the condition was open and obvious is not supported by the evidence and summary judgment must be denied.

Yet, even if the condition was determined as a matter of law to be open and obvious, that would not warrant summary judgment, since an open and obvious danger only discharges a landowner's duty to warn, not its duty to maintain. De Cruz-Haymer v. Festival Food Market, Inc., 117 So. 3d 885, 888 (Fla. 4th DCA 2013); Denson v. SM-Planters Walk Apts., 183 So. 3d 1048 (Fla. 1st DCA 2015); Lomack v. Mowrey, 14 So. 3d 1090, 1092 (Fla. 1st DCA 2009). In Lomack, the court determined even though the hazard was caused by loose wires that were open and obvious and the property owner thus had no duty to warn invitees of the loose wires, it was error by the lower court to grant summary judgment for the property owner, as there is still the issue of the duty to maintain the premises in a reasonably safe condition. 14 So. 3d at 1092.

Mr. Thorpe testified the environment was unsafe with an inward-opening door where it is unknown whether anyone is inside the restroom who would be in the door's path and know to use caution. (J. Thorpe Depo., 57:10 – 19). Mr. Vega also testified he could not see inside when he was about to open the door and never saw Dr. Williams prior to knocking him over. (Vega depo., 32:3 – 5). Likewise, Dr. Williams could not have known when someone was about to enter the restroom, potentially about to create a narrowed path from the urinal to the sink.

To preclude liability, a condition must be so open and obvious that an invitee is expected to discover it and protect himself. Ascroft v. Calder Race Course, Inc., 492 So. 2d 1309, 1311 (Fla. 1986). With a constant condition, like a step down in the floor of a home, the condition is apparent and recognizable to be open and obvious. Shoen v. Gilbert, 436 So. 2d 75 (Fla. 1983). With a door that can open suddenly and would unexpectedly and immediately narrow the expected path of egress, an open-and-obvious defense cannot apply to grant summary judgment.

### ii. The Building Code Issues Are Not An Issue At This Time.

At this early point in the case, no evidence has been presented that there are building code violations by the Defendant, which are their duty to correct. Yet, there are still depositions to take and experts have not yet been disclosed. Indeed, a Scheduling Order was just issued setting such deadlines on October 6, 2017, which was Defendant's motion was filed.

### iii. Inward-Opening Restroom Door Creates An Unknown, Hidden Danger To An Invitee Until The Moment It Becomes A Danger.

The Defendant contends an inward-opening restroom door is "common or innocuous in everyday life" and therefore is not dangerous to Dr. Williams. However, the door condition was not an apparent and constantly-present condition. Instead, it was a "reasonably unknown hidden danger" that required warning under Florida law because it appeared suddenly and without warning to the invitee. See Valladares v. Bank of Am. Corp., 197 So. 3d 1, 13 (Fla. 2016).

The duty to warn about "reasonably unknown hidden dangers" of which the owner knew or should have known not only applies to dangerous conditions that arise and require correction, but also to taking action to mitigate or eliminate the possibility of a foreseeable risk of harm *before* it occurs. See Markowitz v. Helen Homes of Kendall Corp., 826 So. 2d 256, 259-60 (Fla. 2002). One establishes foreseeability by a showing a business had even constructive knowledge a dangerous condition likely to cause harm exists on the premises. Hall v. Billy Jack's, Inc., 458 So. 2d 760, 761 (Fla. 1984). If despite constructive or actual knowledge of a risk of danger, a business owner still fails to take steps to avoid the danger, the business may have breached its duty and thus be required to pay damages for resulting injuries to its invitee. See id. at 762.

In Friedrich v. Fetterman & Assoc., P.A., a prospective client came to a law firm for a meeting and fell to the ground and suffered injuries when the chair he sat in collapsed. 137 So. 3d 362, 363 (Fla. 2013). The prospective client claimed there was a defect in the chair that eventually caused it to fail and would have been discovered had semi-annual inspections of the chairs been performed, as required by the law firm. Id. at 366. The law firm claimed the defect was not discoverable because semi-annual testing was not required. Id. The Florida Supreme Court quashed the Fourth DCA's ruling granting a directed verdict, holding instead the evidence suggested the defect could have been discovered by the law firm and addressed by warning about or fixing the dangerous condition. Id. at 367. Therefore, the issue was a jury question on whether the law firm was negligent for causing the injuries to the prospective client. Id. at 366-67.

Neither a common action like sitting in a chair nor walking by an inward-opening door allow for negligence to be determined as a matter of law when the premises owner knew or should have known of the danger; yet, the Defendant did nothing to address the danger of the restroom door. There were never any store policies or training provided on restroom entry or

safety. (Vega depo., 20:11 – 20:19). If any such policies had been in place, Mr. Vega would have abided by same. (Vega depo., 30:18 – 21). The jury could thus reasonably conclude the Defendant failed to address the danger, leading to Dr. Williams' injury and subsequent death.

Furthermore, after he used the urinal, Dr. Williams walked toward the sinks when Mr. Vega opened the door with such force Dr. Williams could not avoid getting knocked to the floor by the "thick wood door." (J. Thorpe Depo., 11:16 – 25; 13:8 – 14:2; 14:7 – 9; 15:9 – 11; 58:1 – 21). Dr. Williams was struck with the end of the door. (J. Thorpe Depo., 14:5 – 6). So, he was hit with the part moving fastest along its trajectory and in a position where he would be least likely to suspect he was in the door's pathway. Dr. Williams landed face up on the ground, indicating he was hit with such force he didn't even have time to try to catch his balance or turn while falling. (J. Thorpe Depo., 21:4 – 5). None of that evidence suggests an innocuous condition.

Mr. Vega testified about how the danger seems to arise particularly when the restroom is crowded: if the restroom was at capacity, maneuvering in the restroom would become more difficult with the door open because it extends into the urinal-to-sink path. (Vega depo., 36:6 – 18). And at the time he entered the restroom, it was at capacity. (Vega depo., 37:11 – 16). This created the environment where the condition of an inward-opening restroom door was a danger.

Mr. Thorpe's testimony confirmed the unsafe and hidden dangers created by the inward-opening door. A non-party to the case and one who had been inside the restroom, Mr. Thorpe felt the environment was unsafe with an inward-opening door where it is unknown to the one entering the restroom whether there is anyone inside the restroom who would be in the path of the opening door. (J. Thorpe Depo., 57:10 – 19). Mr. Vega also testified he could not see inside when he was about to open the door and never saw Dr. Williams prior to knocking him over.

(Vega depo., 32:3 – 5). Yet, nothing was done to address this issue by the Defendant, and therefore, summary judgment must be denied.

### iv. There was Constructive Notice of a Risk-Creating Condition.

Contrary to Defendants' assertion, it had constructive notice of the dangerous condition created by the inward-opening restroom door. Constructive notice means a dangerous condition exists for a long enough time the premises owner "should have known of it." <u>Haynes v. Lloyd</u>, 533 So. 2d 944, 946 (Fla. 5th DCA 1988). Although no incidents are known at this time to support a claim of actual notice, the dangerous condition seems to have been in place since the restaurant opened for business on Defendant's property the year prior. Doc. 16, Exh. A, ¶¶ 8-10. Mr. Vega himself knew that the restroom became difficult to maneuver when at capacity like it was during that times, causing those within to more certainly walk through the path of the door to get from the urinal to the sinks. (Vega depo., 36:6 – 18; 37:11 – 16). The evidence before the Court warrants denying the motion for summary judgment based upon the Defendant being on constructive notice of the risk-creating condition.

### D. Mr. Vega Was Negligent In How He Entered The Restroom.

The evidence presented in this case has created a jury question regarding whether Mr. Vega entered the restroom in a negligent, unsafe manner causing Dr. Williams to fall and suffer injuries.[2] Assuming the operative complaint is sufficient, Plaintiffs believe the evidence presented creates a jury question on the negligence of Mr. Vega.

Mr. Vega knew it was an inward-opening door that could simply be thrown open. (Vega depo., 27:21 – 28:6). He knew it was not a heavy door, allowing it to be opened as with a normal door, not requiring much force to open it. (Vega depo., 28:7 – 29:3). He knew this bathroom was

---

[2] To the extent Plaintiffs must specifically plead the vicarious liability of Defendant for its employee, Plaintiffs have also moved to amend the complaint to add allegations to support same.

smaller than the Defendant's others such that patrons would need to travel from the urinal to the sink, passing by the door's path when it is opened. (Vega depo., 35:11 – 16; 35:21 – 36:11; 36:19 – 24; 55:23 – 56:4). He estimated that the door would extend an additional nine inches into the pathway from the urinals to the sinks beyond the metal urinal divider. (Vega depo., 40:3 – 8).

He knew if the bathroom was at capacity maneuvering in the restroom is more difficult with the door open, asit extends into the path from the urinal to the sink. (Vega depo., 36:6 – 18). This restroom was at capacity, as expected during a lunch rush. (Vega depo., 37:11 – 16).

Yet, when entering the restroom he took no precautions to announce his impending entry by knocking or otherwise announcing himself. (Vega depo., 29:22 – 25). He opened the door with enough force that he heard a "bang in the door" and looked inside to see he had knocked Dr. Williams to the floor. (Vega depo., 31:1 – 7). The door hit Dr. Williams so hard that he was on the floor by the time Mr. Vega looked inside to see what had caused the "bang in the door." (Vega depo., 31:8 – 15). He must have applied "a lot of force" and been traveling "at a very quick rate" to cause such a large thud and knock over Dr. Williams. (J. Thorpe Depo., 58:1 – 5). Likely, he did so because he was in a hurry during the lunch rush and had already walked to the employee restroom and found it was occupied, requiring him to travel across the premises to the other restroom. (Vega Depo., 22:11 – 22:19; 23:5 – 12; 51:5 – 11; 35:21 – 36:5).

Finally, Mr. Vega apologized for knocking over Dr. Williams and wishes he could go back in time and not open the door in the manner that he did. (Vega depo., 24:4 – 10; 45:8 – 13). Mr. Vega did not feel that Dr. Williams, on the other hand, did anything wrong to cause the incident. (Vega depo., 49:4 – 7). This admission of fault and testimony by Defendant's employee confirming lack of fault by Dr. Williams certainly creates a jury issue regarding the Defendant's negligence. Thus, the Defendant's motion for summary judgment must be denied by the Court.

**III.    DISCOVERY YET TO BE COMPLETED**

Despite the overwhelming evidence to support the Plaintiffs' claims of negligence, discovery is not yet complete. Specifically, Plaintiffs have scheduled the deposition of Defendant's store manager at the time of the incident, Maurice O'Donahue, for October 25, 2017.[3] More than likely, he will offer testimony on the Defendant's policies and procedures or lack thereof as well as how this specific incident occurred.  Plaintiffs do not believe they need the testimony of Mr. O'Donahue to prevail on the present motion, but should the Court find it necessary to rule on the motion, Plaintiffs can amend this response after the deposition transcript is obtained. Plaintiffs have also requested depositions of two fact witnesses, a representative for the Defendant and John Pike, a third party whose affidavit is attached to the Defendant's motion.

Moreover, experts have not been disclosed, which may create additional disputes of fact. Also, the Plaintiffs did not have the opportunity to cross-examine those who signed affidavits on behalf of the Defendant, which may create further disputes of fact. Therefore, if the Court is inclined to grant the motion, Plaintiffs would ask for leave to conduct additional discovery.

**IV.    CONCLUSION**

The testimony and evidence presented in this case supports Plaintiffs causes of action and, at a minimum, creates a jury question on whether there was negligence by the Defendant, either through its employee, Mr. Vega, or due to the lack of policies and procedures or failure to correct a dangerous condition. Thus, the motion for summary judgment should be denied.

---

[3] The Notice of Deposition was filed as Doc. 19, but same was stricken by the Court since, at the time, there was no basis for filing discovery documents. Same can be refiled if necessary.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed via ECF on this the 20th day of October, 2017, upon **Joseph P. Menello, Esq.**, and **Suzanne Kersh, Esq.**, Wicker, Smith, O'Hara, McCoy & Ford, P.A., 390 N. Orange Ave., Ste. 1000, Orlando, Florida 32801 ORLcrtpleadings@wickersmith.com (*Attorneys for BJ'S Restaurants, Inc.*).

*/s/ Jonathan T. Gilbert*
Jonathan T. Gilbert, Esq.
Florida Bar No. 064829
Colling Gilbert Wright & Carter, LLC
801 N. Orange Ave., Suite 830
Orlando, FL 32801
Telephone: (407) 712-7300
Facsimile: (407) 425-8171
Email: JGilbert@TheFloridaFirm.com
Service: RFlanagan@TheFloridaFirm.com
RBryan@TheFloridaFirm.com