# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

ELIZABETH THORPE and JOHN
CLARK WILLIAMS, II,
    Plaintiffs,

v.                                                      Case No: 6:17-cv-1162-Orl-18TBS

BJ'S RESTAURANTS, INC.,
    Defendant.

## ORDER

THIS CAUSE comes for consideration on Defendant BJ's Restaurants Inc.'s ("BJ's) Dispositive Motion for Final Summary Judgment (the "Motion") (Doc. 16), to which Plaintiffs Elizabeth Thorpe ("E. Thorpe") and John Clark Williams, II ("Williams") (collectively, the "Plaintiffs") filed a response in opposition (Doc. 26) and BJ's replied (Doc. 32). For the reasons that follow, the Motion will be granted.

### I. BACKGROUND

This case arises out of an alleged fall (the "Incident") that occurred in the men's restroom (the "Men's Restroom") on BJ's premises located at 8285 Red Bug Lake Road in Oviedo, Florida (the "Oviedo Restaurant"). (Doc. 3 ¶¶ 7, 13; Doc. 26 at 1.) On September 23, 2015, decedent John Clark Williams, M.D. ("Dr. Williams") was a patron at the Oviedo Restaurant. (Doc. 16 at 2; Doc. 26 at 3.) Dr. Williams was in the Men's Restroom with his son-in-law, Jerry Thorpe ("J. Thorpe"), when one of BJ's employees, Ray Jomark Alizea Vega ("Vega") opened the inward-opening Men's Restroom door. (J. Thorpe Deposition, Doc. 29-1 at 11:8-10; Vega Deposition, Doc. 29-2 at 23:13-17; DeJesus Deposition, Doc. 29-3 at 36:12-14.) Prior to going to the Men's Restroom, Vega was working on the pizza station at the Oviedo Restaurant, and he left the pizza

station to use the Men's Restroom with no orders pending on his screen. (Vega Dep. at 29:13-21.) Although the Oviedo Restaurant was busy due to a lunch rush, Vega was able to clear his orders and take a restroom break. (*Id.* at 23:5-12, 29:13-21, 51:5-11.) Because the employee restroom was occupied, Vega left the back area of the Oviedo Restaurant to access the front Men's Restroom. (*Id.* at 35:24-36:5.) By the time Vega returned to the pizza station after going to the Men's Restroom, he had more orders to complete. (*Id.* at 29:19-21.)

Prior to the date of the Incident, Dr. Williams had been to the Oviedo Restaurant on multiple occasions and used the Men's Restroom. (J. Thorpe Dep. at 22:11-14, 23:4-7.) Vega did not know that Dr. Williams was in the Men's Restroom prior to opening the door. (Vega Dep. at 23:13-16.) Vega did know, however, that the restroom door was an inward-opening door that did not have a handle or latch system that required turning a knob to gain entry. (*Id.* at 27:21-28:2.) Vega testified that the Men's Restroom door was of a normal weight and could be pushed open. (*Id.* at 28:3-9.) Vega also stated that the Men's Restroom is smaller than restrooms at BJ's Lake Buena Vista location; however, Vega acknowledged that BJ's Lake Buena Vista location is bigger than the Oviedo Restaurant. (*Id.* at 55:23-56:4.) Additionally, Vega admitted that patrons pass by the path of the Men's Restroom door when walking from the urinals to the sink. (*Id.* at 35:11-16.) Vega specifically stated that the Men's Restroom door, when opened, extends into the pathway from the urinals to the sinks, but that there might be enough clearance to walk from one of the urinals to the sinks without walking around the door. (*Id.* at 36:6-11, 36:19-37:10.)

Indisputably, Vega did not knock on the door of the Men's Restroom prior to opening it. (Vega Dep. at 29:22-25.) When Vega opened the door of the Men's Restroom, the door hit Dr. Williams, and Dr. Williams fell to the floor. (*Id.* at 31:1-15.) Incontrovertibly, Dr. Williams was hit by the door when he was in the process of passing behind J. Thorpe to walk from the urinals to

the sink. (J. Thorpe Dep. at 11:8-20.) J. Thorpe was standing at the bathroom sink with his back to the urinals and did not see the Incident. (J. Thorpe at 13:8-13.) However, J. Thorpe stated that he heard a loud thud and observed Dr. Williams on the restroom floor lying face up after he was hit by the door. (*Id.* at 13:20-14:2, 21:4-5.) Plaintiffs allege that the injuries suffered by Dr. Williams as a result of being hit by the Men's Restroom door led to his demise on July 9, 2016. (Doc. 3 ¶¶ 13-14.)

On November 23, 2016, Plaintiffs, as Co-Personal Representatives of the Estate of Dr. Williams, filed their original complaint against BJ's and Esteban Antonio Murillo, an individual, in the Eighteenth Judicial Circuit in and for Seminole County, Florida. (*See* Doc. 32-1 at 1.) On June 5, 2017, Plaintiffs filed their amended complaint (the "Amended Complaint") against BJ's, which BJ's removed to this Court on June 23, 2017. (*See* Docs. 1, 3.) In Count I of the Amended Complaint (Doc. 3), Plaintiffs attempt to bring a survival action for negligence against BJ's. (*Id.* ¶¶ 18-21.) In Count II, Plaintiffs purport to bring a wrongful death action against BJ's. (*Id.* ¶¶ 22-25.) BJ's now moves for summary judgment in its favor on Plaintiffs' claims.

## II. LEGAL STANDARD

A court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputed issues of material fact preclude the entry of summary judgment, but factual disputes that are irrelevant or unnecessary do not. *Id.* "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In determining whether the moving party has satisfied its burden, the Court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). The moving party may rely solely on the pleadings to satisfy its burden. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). A non-moving party bearing the burden of proof, however, must go beyond the pleadings and submit affidavits, depositions, answers to interrogatories, or admissions that designate specific facts indicating there is a genuine issue for trial. *Id.* at 324. If the evidence offered by the non-moving party "is merely colorable, or is not significantly probative," the Court may grant summary judgment. *Anderson*, 477 U.S. at 249-50. Similarly, summary judgment is mandated against a party who fails to prove an essential element of its case "with respect to which [the party] has the burden of proof." *Celotex*, 477 U.S. at 323.

### III. ANALYSIS

Plaintiffs allege ten (10) ways that BJ's, through itself or through its employee, was negligent in the Incident at issue in this case. Specifically, Plaintiffs attest that BJ's breached its duty to Dr. Williams by committing one or more of the following acts of negligence:

a. Negligently failing to maintain or adequately maintain the premises thereby endangering the safety of [Dr. Williams];
b. Negligently designing the premises thereby endangering the safety of [Dr. Williams];
c. Negligently failing to inspect or adequately inspect the subject location for dangerous conditions thereby endangering the safety of [Dr. Williams];
d. Negligently failing to warn or adequately warn [Dr. Williams] of the dangerous conditions when [BJ's] know or should have known of said danger and [Dr. Williams] was unaware of said danger;
e. Negligently failing to correct, or adequately correct the dangerous condition when said dangerous condition was known to [BJ's] or had existed for a sufficient length of time so that [BJ's] knew or should have known of it;

  f. Negligently failing to take appropriate measures to prevent this foreseeably dangerous condition from occurring when such condition occurred with regularity during the regular course of [BJ's] business;
  g. Negligently failing to have adequate staff on duty and/or assigned to the task of inspecting the subject location for dangerous conditions; particularly when such dangerous conditions occurred with regularity during the regular course of [BJ's] business;
  h. Negligently failing to place warning signs and/or other devices on the aforesaid premises to advise patrons such as [Dr. Williams] of the existence of the aforesaid dangerous condition;
  i. Negligently failing to train and/or inadequately training its employees to inspect said premises for dangerous conditions; particularly when such dangerous conditions occurred with regularity during the regular course of [BJ's] business; and
  j. Negligently failing to act reasonably under all the circumstances.

(Doc. 3 ¶¶ 20, 24.) Purportedly, Dr. Williams suffered significant injuries and died on July 9, 2016, "[a]s a direct and proximate result of the aforesaid negligence of [BJ's]." (*Id.* ¶¶ 21, 25.)

In order to sustain a negligence claim under Florida law, a plaintiff must prove by a preponderance of the evidence that: "(1) the defendant had a duty to protect the plaintiff; (2) the defendant breached that duty; and (3) the defendant's breach was the proximate cause of the plaintiff's injuries and resulting damages." *Potash v. Orange Cnty. Lake Country Club, Inc.*, No. 6:03-cv-1652-Orl-18KRS, 2005 WL 1073926, at *2 (M.D. Fla. Apr. 29, 2005) (citing *Cooper Hotel Servs., Inc. v. MacFarland*, 662 So. 2d 710, 712 (Fla. 2d DCA 1995)). "A landowner owes two duties [of care] to a business invitee: (1) to use reasonable care in maintaining its premises in a reasonably safe condition; and (2) to give the invitee warning of concealed perils that are or should be known to the landowner and that are unknown to the invitee and cannot be discovered through the exercise of due care." *Id.* (citing *St. Joseph's Hosp. v. Cowart*, 891 So. 2d 1039, 1040 (Fla. 2d DCA 2004). The two duties owed by a landowner to a business invitee are "distinct." *Daniels v. United States*, Case No. 8:13-cv-2661-T-MAP, 2016 WL 7206035, at *2 (M.D. Fla. Jan 27, 2016). Thus, "[w]hile the fact that a danger is obvious discharges a landowner's duty to warn, it does not discharge the landowner's duty to maintain his premises." *De Cruz-Haymer v. Festival*

*Food Mkt., Inc.*, 117 So. 3d 885, 888 (Fla. 4th DCA 2013) (citations omitted); *see Fenster v. Publix Supermarkets, Inc.*, 785 So. 2d 737, 739 (Fla. 4th DCA 2001) ("A plaintiff's knowledge of a dangerous condition does not negate a defendant's potential liability for negligently permitting the dangerous condition to exist; it simply raises the issue of comparative negligence and precludes summary judgment."). However, "only when a landowner should anticipate that people will choose to negotiate obvious hazards and thereby injure themselves, despite their awareness of the danger, is the landowner responsible for injury resulting from an obvious condition." *Arnoul v. Busch Entm't Corp.*, No. 8:07-cv-1490-T-24-TGW, 2008 WL 4525106, at *2 (M.D. Fla. Oct. 6, 2008) (citing *Aaron v. Palatka Mall, L.L.C.*, 908 So. 2d 574, 576-77 (5th DCA 2005)). Additionally, "[a] plaintiff . . . can prove a dangerous condition by showing an uncommon design or mode of construction creates a hidden danger that a prudent invitee would not anticipate." *Glanzberg v. Kauffman*, 788 So. 2d 252, 254 (Fla. 4th DCA 2000). Still, where an alleged condition that causes an injury was "so open and obvious, so common and so ordinarily innocuous" it is not dangerous as a matter of law. *Circle K Convenience Stores, Inc. v. Ferguson*, 556 So. 2d 1207, 1208 (5th DCA 1990).

In order to prevail in this case, Plaintiffs must be able to show that BJ's failed to use reasonable care in maintaining its premises and had actual or constructive notice of the alleged dangerous condition. *See Ugaz v. Am. Airlines, Inc.*, 576 F. Supp. 2d 1354, 1368 (S.D. Fla. 2008) ("However, even if a condition qualifies as dangerous under the standard, the plaintiff still has to show actual or constructive notice that the defendant knew or should have known of it."); *Haynes v. Lloyd*, 533 So. 2d 944, 946 (Fla. 5th DCA 1988) ("A plaintiff asserting a cause of action based on premises liability must, among other things, plead and prove that defendant possessor had actual knowledge . . . [or] constructive knowledge . . of the dangerous operation, activity, or condition

on the premises."); *Winn-Dixie Montgomery, Inc. v. Petterson*, 291 So. 2d 666, 668 (1st DCA 1974) ("Liability for negligence in failing to maintain premises in a reasonably safe condition, or in failing to warn of existing dangers, must be predicated on the occupant's superior knowledge or means of obtaining knowledge concerning the danger.").

BJ's asserts that the design of its Men's Restroom and door abided by the applicable building code and that, prior to the Incident, it did not have actual or constructive notice of the alleged dangerous condition. In fact, there is no evidence that, prior to the Incident, BJ's employees or guests complained to BJ's about the Men's Restroom door posing a hazard to individuals. (*See* Debbie Nichols Affidavit, Doc. 16 at 79-80 ¶¶ 3-5.) There is also no evidence that the Men's Restroom door was broken in any way on the date of the Incident. (*See* DeJesus Dep. at 47:21-48:7; Vega Dep. at 53:16-19.) Notably, according to the undisputed material facts of this case, J. Thorpe was alone in the Men's Restroom with Dr. Williams when Vega entered, and nobody witnessed the door making contact with Dr. Williams's body. (J. Thorpe Dep. at 13:11-13; Vega Dep. at 31:8-15.) J. Thorpe stated that he believed Vega opened the Men's Restroom door with a large amount of force based on the thud he heard and the short duration between when the door was opened and when it hit Dr. Williams. (J. Thorpe Dep. at 13:20-14:9, 58:7-21.) Vega testified that he walked to the Men's Restroom at a normal pace and opened the door by pushing it open with his hand. (Vega Dep. at 29:4-9, 32:6-9.) The record evidence shows that, although BJ's employees underwent orientation and tours of the Oviedo Restaurant and received and were required to attest to reading an employee handbook, BJ's did not provide store policies or training on restroom entry or safety. (*Id.* at 13:4-15:14, 20:11-19.) Vega admits that, if BJ's had policies or procedures in place requiring him to enter the restroom by opening the door slowly or partly opening the door and asking if it was safe to enter, he would have abided by

-7-

same. (*Id.* at 30:12-21.)

Importantly, the record evidence demonstrates that the Men's Restroom abided by the applicable building code, both at the time of construction and as of August 31, 2017. As John Pike ("Pike"), the Chief Plans Examiner with the Seminole County Building Division, stated in his unrebutted affidavit, "the [M]en's [R]estroom, including the [M]en's [R]estroom door, door opening, and clear maneuverable space, was designed in compliance with the [applicable] 2010 Florida Building Code and applicable ADA Accessibility Guidelines." (J. Pike Affidavit, Doc. 16 at 24-26, ¶¶ 2, 7.) Pike further attested that, as of August 31, 2017, the Oviedo Restaurant had never been cited for a Building Code violation. (*Id.* ¶ 14.) Pike visited the Oviedo restaurant on August 31, 2017 and found that the Men's Restroom, including the door, complied with the approved building plans on file with the Seminole County Building Department. (*Id.* ¶¶ 10-11.) According to Pike, as of August 31, 2017, "the [M]en's [R]estroom, including the door, complies with all applicable Florida Building Codes[,] . . . [and] all applicable ADA Accessibility Guidelines." (*Id.* ¶¶ 12-13.)

Indubitably, Dr. Williams visited the Oviedo Restaurant on numerous occasions and used the Men's Restroom on at least one (1) occasion prior to the date of the Incident. During Dr. Williams's visit, he had the opportunity to observe that the door of the Men's Restroom opened inward, as well as the opportunity to observe the layout of the Men's Restroom. Vega and DeJesus also testified to their knowledge regarding the size and layout of the restroom and that the door of the Men's Restroom opened inward. The operation of the door and the possibility of a person walking in the path of the door when walking between the urinals and the sinks was open and obvious to Dr. Williams. While this open and obvious condition may not, in and of itself, warrant summary judgment, it does discharge BJ's duty to warn its invitees, like Dr. Williams, of

-8-

the condition. Further, the undisputed material facts do not plausibly support Plaintiffs' allegations that BJ's failed to use ordinary care in keeping its premises in a reasonably safe condition. There is a glaring lack of record evidence that BJ's had actual or constructive notice of any dangerous condition pertaining to the Men's Restroom that it was obligated to address prior to the Incident. An inward-opening restroom door is open, obvious, and common, and the Men's Restroom door was not defective or broken, nor is there sufficient evidence that it was improperly designed, maintained, or inspected. The record evidence in this case is wholly insufficient to raise a jury question as to whether BJ's was negligent, either through its employee, Vega, or due to BJ's lack of policies or procedures, failure to correct a dangerous condition, or otherwise.[1] Accordingly, BJ's is entitled to summary judgment in its favor as a matter of law.[2]

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** and **ADJUDGED** that Defendant BJ's Restaurants, Inc.'s Dispositive Motion for Final Summary Judgment (Doc. 16) is **GRANTED**. The Clerk of Court is directed to **ENTER JUDGMENT** in favor of Defendant BJ's Restaurants, Inc. and against Plaintiffs Elizabeth Thorpe and John Clark Williams, II, and to thereafter **CLOSE** the case.

**DONE** and **ORDERED** in Orlando, Florida on this _____ day of December, 2017.

_____
G. KENDALL SHARP
SENIOR UNITED STATES DISTRICT JUDGE

Copies furnished to: Counsel of Record

---

[1] Plaintiffs do not specifically plead a cause of action for vicarious liability in the Amended Complaint; however, the Court notes that there is insufficient record evidence to show that Vega was negligent in how he entered the Men's Restroom.

[2] The Court reviewed all of the record evidence in this case, including but not limited to the deposition of Maurice O'Donaghue. The Plaintiffs had "an adequate opportunity for discovery" and a sufficient factual record exists to appropriately grant summary judgment in BJ's favor. *See Snook v. Trust Co. of Ga. Bank*, 859 F.2d 865, 870 (11th Cir 1998).

-9-